UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| CHRISTOPHER FEW, CATHERINE MARDIS AND CANDACE FEW<br>*Plaintiffs*<br><br>v.<br><br>DERRICK STAFFORD, NORRIS GREENHOUSE, JR., FLOYD VOINCHE, CITY COURT OF THE TOWN OF MARKSVILLE, TOWN OF MARKSVILLE, PARISH OF AVOYELLES, PROGRESSIVE PALOVERDE INSURANCE COMPANY, JASON BROUILLETTE, AND KENNETH PARNELL, III<br>*Defendants* | CIVIL ACTION NO.:<br><br>JUDGE:<br><br>MAGISTRATE JUDGE: |

## COMPLAINT

**NOW INTO COURT**, come plaintiffs, Christopher Few ("Chris," "Christopher," or "Few"), Catherine Mardis ("Catherine" or "Mardis") and Candace Few ("Candace"), who submit this Complaint and seek damages, redress and relief, as follows:

## PRELIMINARY STATEMENT

1.      Six (6) year old Jeremy Mardis ("Jeremy") was recklessly gunned down, and his father Christopher Few was callously shot and critically wounded on November 3, 2015 in Marksville, Louisiana as a result of the objectively unreasonable and unconstitutionally deadly force used by defendants, Derrick Stafford and Norris Greenhouse, Jr.  Stafford and Greenhouse are deputy city marshals for the City Court of the Town of Marksville and were acting in that capacity when they chased down and shot Jeremy and Christopher.

1

2.      This is a civil action seeking damages against defendants for committing acts under color of law, and depriving plaintiffs including Christopher Few, decedent Jeremy Mardis, and Catherine Mardis of rights secured by the Constitution and laws of the United States, and the State of Louisiana.

3.      Through this action, plaintiffs seek all relief to which they may be entitled under the law, including an award of compensatory damages, punitive damages, attorney fees, and costs from defendants for the deprivation and violation of plaintiffs' and Jeremy's rights under the United States Constitution and Louisiana law, including but not limited to the Louisiana State Constitution.  Plaintiffs contend that defendants are guilty of certain acts and/or omissions, created, maintained, and/or engaged in policies, procedures, practices, and/or customs which have contravened and violated the rights guaranteed to plaintiffs under the Fourth and Fourteenth Amendments to the United States Constitution, as well as various provisions of Louisiana law including but not limited to the Louisiana Constitution, Article I, §§2 & 5.

## JURISDICTION AND VENUE

4.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This action is also brought under and pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of Plaintiffs' rights guaranteed under the United States Constitution including the Fourth and Fourteenth Amendments.

5.      Venue is proper in the Western District of Louisiana pursuant to 28 U.S.C. § 1391 in that all of the relevant events, acts and omissions occurred in this judicial district, the defendants maintain offices in this judicial district, the defendants regularly conduct business in this district and/or the defendants reside in this judicial district.

6.      This Court also has supplemental jurisdiction over the Louisiana state law claims asserted herein pursuant to 28 U.S.C. § 1367, including but not limited to claims asserted pursuant to La-C.C. arts. 2315, 2315.6, 2316, 2317 and 2320, the Louisiana Revised Statutes, and for violations of Article I, Sections 2 & 5 of the Louisiana Constitution.

**PARTIES**

**Plaintiffs:**

7.      Plaintiff, **Christopher Few** ("Chris," "Christopher" or "Few"), is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana.

8.      Plaintiff, **Catherine Mardis** ("Catherine" or "Mardis"), is a resident of and domiciled in Lamar County, Mississippi, and is a citizen of the United States of America and the State of Mississippi.

9.      Plaintiff, **Candace Few** ("Candace"), is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana.

**Defendants:**

10.      **Derrick Stafford** ("Stafford") is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana. Stafford is sued in his individual capacity, as well as in his capacity of a deputy city marshal of the City Court of the Town of Marksville.

11.      **Norris Greenhouse, Jr.** ("Greenhouse") is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana.  Greenhouse is sued in his individual capacity, as well as in his capacity of a deputy city marshal of the City Court of the Town of Marksville.

12.     **Floyd Voinche** ("Voinche"), is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana and, at all times relevant hereto, the duly elected marshal of City Court of the Town of Marksville and Town of Marksville.  Voinche is sued both in his individual capacity and in his official capacity as a policymaker and decision maker of City Court of the Town of Marksville, Town of Marksville, and Parish of Avoyelles.

13.     **City Court of the Town of Marksville** ("City Court"), is a body politic created by LA-R.S. 13:2488.51 consisting of a city judge, marshal and clerk and is domiciled in Marksville, Avoyelles Parish, Louisiana.  City Court's agent is its executive officer, Floyd Voinche.

14.     **The Town of Marksville** (the "Town") (Alternatively, this municipality and political subdivision may be known as City of Marksville) is a municipality and political subdivision of the State of Louisiana.  For purposes of this complaint, references to departments or subdivisions within the Town such as "Marksville Police Department" or "MPD" are intended to refer to the Town and the individuals acting within the department or subdivision, as appropriate.  The Town's agent is Mayor John H. Lemoine, 427 North Washington Street, Marksville, LA 71351.

15.     **Parish of Avoyelles** ("Parish" or "Avoyelles Parish"), is a political subdivision of the State of Louisiana which may be served through the President of the Avoyelles Parish Policy Jury, Col. Charles B. Jones, at 213 N. Main St., Marksville, LA 71351.

16.     **Progressive Paloverde Insurance Company** ("Progressive"), is a foreign insurance company licensed to do and doing business in the State of Louisiana, and domiciled in the State of Indiana.

4

17.     **Jason Brouillette** ("Brouillette") is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana. Brouillette is sued in his individual capacity, as well as in his capacity of a deputy city marshal of the City Court of the Town of Marksville.

18.     **Kenneth Parnell, III**, ("Parnell") is a resident of and domiciled in Avoyelles Parish, Louisiana, and is a citizen of the United States of America and the State of Louisiana. Parnell is sued in his individual capacity, as well as in his capacity as an officer of the Marksville Police Department.

## FACTS

### Facts Applicable to All Counts, Claims, Rights and Causes of Action

19.     Each of the foregoing facts and paragraphs is incorporated as if fully set forth herein.  Moreover, the facts set forth in the remainder of this Complaint are applicable to all Counts, Claims, Rights, and Causes of Action asserted herein in order to provide context specificity.

20.     For purposes of this Complaint, plaintiffs will use the terms deputy city marshal, law enforcement officer, police officer, peace officer or simply officer.  These terms are used and to be taken in context and are intended to be synonymous, unless otherwise indicated.

### Facts Surrounding the Shooting of Jeremy Mardis and Christopher Few

21.     The tragic series of events that give rise to this case occurred on November 3, 2015 in Marksville, Louisiana. Marksville is located in Avoyelles Parish.

22.     On November 3, 2015, at approximately 9:20 p.m., Greenhouse, a Marksville Ward 2 Deputy City Marshal, while on duty and acting in his official capacity, initiated and engaged in a vehicle pursuit of a 2000 Kia Sport (sometimes referred to herein as "Vehicle 1").

23.     The 2000 Kia Sport (Vehicle 1) was owned by Candace Few, and was operated by plaintiff, Christopher Few. Christopher and Candace are siblings. Vehicle 1 was also occupied by Jeremy Mardis, the six-year-old son of plaintiffs, Christopher Few and Catherine Mardis. Jeremy, who suffered from autism spectrum disorder, occupied the front passenger seat of Vehicle 1.

24.     The reason for the pursuit remains unclear given that Greenhouse, in a breach of policy, failed to transmit his reason for initiating a stop to the dispatcher or otherwise indicate same over the police radio frequency.  In fact, to date, Greenhouse has yet to provide a reason for having initiated the stop to any law enforcement personnel officially involved in the investigation of these events.

25.     At the time Greenhouse initiated the pursuit, there was no outstanding warrant for Christopher Few's arrest, and Greenhouse was not presented with nor did he have knowledge of any facts that would lead a reasonably objective law enforcement officer to conclude that Few had committed some crime, was committing a crime, or was about to commit a crime, or that he posed a threat or risk of death or great bodily harm to anyone.  Greenhouse did not have reasonable cause to initiate an investigatory stop of Few nor did he have probable cause to arrest Few, or otherwise effect a seizure of Few.

26.     Greenhouse was operating a patrol car or unit ("Vehicle 2") owned by, in the custody or under the control, or *garde* of City Court, Voinche, and the Town.

27.     The pursuit was initiated on Spring Bayou Road, within the territorial jurisdiction of City Court and the Town.

28.     At the same time, Marksville Ward 2 Deputy City Marshals Jason Brouillette ("Brouillette") and Derrick Stafford were also on duty and acting in an official capacity while on

patrol in a Marksville Ward 2 City patrol unit ("Vehicle 3").  Vehicle 3 was driven by Brouillette and Stafford was a guest passenger in the unit.

29.     Vehicle 3 was also owned by, in the custody or under the control, or *garde* of City Court, Voinche and the Town.

30.     Having received a call for assistance, ostensibly from Greenhouse, Brouillette and Stafford also engaged in the vehicle pursuit of Vehicle 1, the 2000 Kia Sport driven by Christopher.  During that pursuit, Brouillette positioned Vehicle 3 behind Vehicle 2 which was being operated by Greenhouse.

31.     Marksville City Police Sgt. Kenneth Parnell, III ("Parnell") responded to the call for assistance, as well, and joined the pursuing units. Parnell was operating a patrol car ("Vehicle 4") owned by, in the custody or under the control, or *garde* of the Town.

32.     Parnell maneuvered his patrol car (Vehicle 4) behind Vehicle 3 as they turned from Preston Street onto Martin Luther King, Jr. Street.  As Parnell followed in the pursuit, he activated his body camera capturing some of the events that were unfolding.

33.     The pursuit ended at the dead-end intersection of Martin Luther King, Jr. Street and Taensas Street.  The ends of Martin Luther King, Jr. and Taensas Streets intersected with the streets forming an approximate right-angle.

34.     As Few reached the end of Martin Luther King, Jr. Street, he made a left-hand turn onto Taensas Street where it abruptly came to a dead-end. Vehicle 2 (the Marksville Ward 2 Deputy City Marshal police unit operated by Greenhouse), Vehicle 3 (the Marksville Ward 2 Deputy City Marshal police unit occupied operated by Brouillette and occupied by Stafford), and Vehicle 4 (the Marksville Police Department police unit operated by Parnell) were all stopped in the intersection of Martin Luther King, Jr. Street and Taensas Street, as well.

35.     The drivers of the three police units oriented their respective vehicles roughly perpendicular to the Few vehicle, ranging from approximately 16 – 40 feet away, with their headlights trained on Vehicle 1 and its occupants, Christopher and Jeremy. Attached as **Exhibit A**, is a Crime Scene Diagram prepared by the Louisiana State Police which depicts the location of all four vehicles at the time of the shooting. Attached as **Exhibit B** is an overhead depiction of the scene. Both Exhibits A & B, and the factual information contained therein are incorporated herein by reference.

36.     Once Vehicles 2 and 3 were stopped, Stafford and Greenhouse immediately exited each of their vehicles and drew their duty weapons – .40 caliber semi-automatic pistols loaded with jacketed hollow-point bullets – and aimed them at Christopher Few.

37.     Stafford and Greenhouse's firearms were powerful weapons capable of causing death or great bodily injury.  And, Stafford and Greenhouse knew or should have known this.

38.      After Stafford and Greenhouse exited their patrol cars, Christopher was commanded to put his hands up in the air – and he complied. Despite Christopher putting his empty hands in the air, Stafford and Greenhouse almost immediately began firing their duty weapons at Christopher Few and Jeremy Mardis.

39.     Greenhouse fired his duty weapon a total of four (4) times and Stafford fired his duty weapon a total of fourteen (14) times.  Between the two, a total of eighteen (18) rounds were fired at Christopher and Jeremy.

40.     There was no precipitating gunfire by Christopher and there was no return fire. Christopher was unarmed.  And, Jeremy was unarmed. No firearms or other weapons capable of causing death or great bodily harm were found in Christopher or Jeremy's possession, or in Vehicle 1.

8

41.     Brouillette and Parnell, having also immediately exited their respective police vehicles prior to the shooting did not fire their duty weapons, though their weapons were drawn and aimed at Christopher and Jeremy.

42.     Christopher and Jeremy, along with Vehicle 1, were struck by multiple gunshots. The forensic investigation by the Louisiana State Police forensically confirmed that both Christopher and Jeremy were shot multiple times by bullets fired by Stafford. The forensic investigation by the Louisiana State Police also reveals that both Christopher and Jeremy each sustained one or more gunshot wounds caused by bullets that cannot be conclusively linked to Stafford or Greenhouse.  In other words, at least one or more bullet wounds sustained by Christopher and Jeremy could have been caused by bullets fired from either Stafford's or Greenhouse's duty weapons.

43.     Brouillette and Parnell were the only other officers present at the time.  While armed, they did not fire their weapons.  Thus, the gunshot wounds that cannot be conclusively linked to Stafford or Greenhouse had to come from either or both of their weapons.

44.     Upon information and belief, the reason that the gunshot wounds are forensically inconclusive is because the wounds were exiting-type of wounds where the projectiles passed through the victims' bodies and were unrecovered or were recovered and were too deformed to make a forensic match, or the projectiles were recovered from the victims' body and were too deformed to make a conclusive forensic match to either firearm.

45.     As a direct result of the actions of Deputy City Marshals Stafford and Greenhouse, Christopher Few was critically wounded, having been shot in his head and chest with at least two gunshots, and Jeremy was fatally wounded having received at least four or five

gunshot wounds.  While Jeremy was ultimately pronounced dead at the scene, he did not immediately die from his wounds, and continued to suffer for a period of time before expiring.

46.     Toward the end of the pursuit, Parnell activated his body camera.  The video obtained by Parnell's body camera captured much of the events and is believed to contain some thirteen minutes and forty-seven seconds of events including, but not limited to, the final seconds of the vehicular pursuit, the shooting of Christopher and Jeremy, and several minutes of the aftermath of the shooting.  The body camera video has or will be hand filed with the Clerk of Court as plaintiff's **Exhibit C** and is incorporated herein by reference, as well.

47.     Upon information and belief, at approximately twenty-six (26) or so seconds into the video, Christopher's empty hands are raised and visible when Stafford and Greenhouse begin firing their duty weapons at Christopher and Jeremy.

48.     Plaintiffs show that prior to the shooting, one or more officers on the scene verbally commanded Christopher to put his hands in the air – and he complied.  Nonetheless, Stafford and Greenhouse began shooting – eighteen times between them – despite Christopher having peacefully surrendered by placing his hands in the air and despite not having first determined whether or not Christopher was alone in the vehicle or whether or not anyone else was in the line of fire.

49.     Parnell's body camera video clearly shows that Stafford and Greenhouse continued to fire multiple rounds at Christopher and Jeremy even after Christopher had his empty, unarmed hands in the air.  This was a barbaric and excessive use of deadly force that demonstrates Stafford and Greenhouse's deliberate indifference to the constitutional rights of Jeremy and Christopher.

50.     At the time Stafford and Greenhouse began firing their weapons, the front and rear of Vehicle 1 were pointing away from all officers on the scene such that any movement of Vehicle 1 forwards or backwards did not present and would not have presented an imminent threat of death or great bodily harm to any of the law enforcement officers at the scene or anyone else, and there was no conduct, actions or behavior demonstrated by Christopher or Jeremy at the time of the shooting or in the moments leading up to the shooting that presented an imminent threat of death or great bodily harm to any of the law enforcement officers on the scene or anyone else.

51.     Stafford and Greenhouse's use of deadly force under the circumstances was not objectively reasonable.

52.     In using deadly force under the circumstance with which they were confronted, Stafford and Greenhouse acted with callous and reckless disregard and deliberate indifference to the constitutional rights of Jeremy and Christopher.

53.     All three of plaintiffs' exhibits, **Exhibits A, B & C**, which are incorporated herein by reference, clearly show that the orientation of all four vehicles at the scene was such that Vehicle 1 – even *if* it were moving forward or backwards - did not and could not have presented an imminent threat of death or great bodily harm to any of the officers at the scene or innocent bystanders.  There is no evidence, however, that any innocent bystanders were present.

54.     Under these circumstances, any objectively reasonable officer would and should have concluded that deadly force was not necessary or justified as no imminent threat of death or great bodily harm existed when Stafford and Greenhouse began firing. Said another way, it was objectively unreasonable for Stafford and Greenhouse to use deadly force against Christopher and Jeremy.

55.     Moreover, at the time the pursuit of Christopher was initiated, and thereafter during the pursuit, none of the officers had reasonable or probable cause to believe that Christopher had committed some crime, was committing a crime or was about to commit a crime.  The pursuit was unlawful, as was the subsequent use of deadly force.

56.     Any objectively reasonable officer presented with the same or similar circumstances as those with which Stafford and Greenhouse were presented, would not have used deadly force against Christopher and Jeremy, and Stafford and Greenhouse in doing so violated the constitutional rights of plaintiffs.

57.     Following the shooting, Parnell was interviewed as part of the Louisiana State Police investigation and admitted to Louisiana State Police Detectives that he did not fire his duty weapon because he did not fear for his life.

58.     Stafford and Greenhouse's use of deadly force was not warranted, justified or necessary for their own self-defense or in defense of others.

59.     Upon information and belief, in the hail of gun fire, Christopher Few was struck two (2) to three (3) times including in the head and chest, and Jeremy was struck at least four (4) or five (5) times including in his head and neck.  Jeremy's wounds were fatal but he did survive the shooting for a short period of time believed to be at least some ten (10) or so minutes following the fatal shooting.  During this time, Jeremy was bleeding profusely and suffered immensely due to the gunshot wounds.

60.     When the firing stopped, the officers on the scene ordered Christopher to exit his vehicle. Even though he had been seriously wounded by the officers' gunshots, Christopher managed to open his door, and fell out the vehicle onto the ground.  Few was seriously wounded

in the head and chest, bleeding profusely, was having difficulty breathing, and could barely move or communicate.

61.     Stafford, Greenhouse, Brouillette and Parnell did not render or provide first aid, timely medical treatment or any comfort measures intended to alleviate pain and suffering to Christopher or Jeremy.

62.     At some point shortly after the shooting, Christopher was placed in handcuffs.

63.     Both Christopher and Vehicle 1 were ultimately searched and no weapons were ever found. However, as is evident from Parnell's body camera video, neither Christopher nor Vehicle 1 appear to have been searched immediately after the shooting for a weapon. In fact, most if not all of the officers at the scene appear to have holstered their duty weapons shortly after the shooting and prior to searching Christopher and Vehicle 1 making it apparent that they did not perceive Christopher or Jeremy as an imminent threat or risk of death or great bodily harm.  In fact, each of the officers at the scene appear to have holstered or otherwise secured their weapons prior to Christopher ever being handcuffed or otherwise secured.

64.     Shortly after the shooting, one or more of the officers on the scene approached and peered into the vehicle where they found that Jeremy was a guest passenger in Vehicle 1 and had been seriously wounded.  In fact, one of the officers remarked that there was a juvenile in the car.

65.     Jeremy's traumatic wounds were so obvious to the officers at the scene, including Stafford, Greenhouse, Brouillette and Parnell, that even a lay person would have reasonably concluded that he was suffering and in dire need of emergent medical treatment.

66.     Based on the actions and conduct of the officers at the scene, which is captured in part on Parnell's body camera video, it appears that Stafford, Greenhouse, Brouillette and Parnell

13

initially and erroneously believed or assumed that Jeremy was dead, simply did not care whether or not he was alive. It was not until approximately some seven and one-half (7 ½) to eight (8) minutes or so after the hail of gunfire, that an officer at the scene, believed to be Parnell, finally checked Jeremy for a pulse and discovered that he was still alive, despite having been shot multiple times including in the head and neck.  However, none of the officers at the scene, including Stafford, Greenhouse, Brouillette and Parnell initiated or rendered any form of first aid, nor did they undertake any other measures in an attempt to stop Jeremy's bleeding or otherwise alleviate or mitigate Jeremy's suffering, or made any attempts to save his life.  Sadly, Jeremy was left to suffer – and die – while the officers casually searched for "gloves."

67.    Stafford, Greenhouse, Brouillette and Parnell each demonstrated a callous and deliberate indifference to the suffering and serious medical needs of both Jeremy Mardis and Christopher Few.

68.    The callous and deliberate indifference to the serious medical needs of Jeremy Mardis and Christopher Few constitute an unnecessary and wanton infliction of pain and suffering and, in the case of Jeremy Mardis, a denial of a chance of survival, and death.  This deliberate indifference was shown by Stafford, Greenhouse, Brouillette and Parnell.

69.    Stafford and Greenhouse's use of deadly force in firing their duty weapons was not in self-defense as they did not and could not have reasonably believed that they, or anyone else, were in imminent danger of losing their lives or receiving great bodily harm, nor was the firing of their weapons necessary to save themselves or anyone else at the scene from any such risk or danger.

70.     Stafford and Greenhouse's use of deadly force was unnecessary and objectively unreasonable, and constituted deliberate indifference to the constitutional rights of plaintiffs including Christopher and Jeremy.

71.     Following the shooting, the Louisiana State Police conducted an investigation of the incident and within days arrested both Derrick Stafford and Norris Greenhouse, Jr. for willfully, unlawfully, knowingly and intentionally committing second degree murder under La-R.S. 14:30.1 and attempted second degree murder under La-R.S. 14:30.1 as modified by La-R.S. 14:27.

72.     Following a meeting of a legally convened grand jury, the grand jury returned a true bill indictment against both Derrick Stafford and Norris Greenhouse, Jr. for those criminal offenses, as well.  Plaintiffs believe that the facts prove that both Derrick Stafford and Norris Greenhouse, Jr. are guilty of second degree murder of Jeremy Mardis and attempted second degree murder of Christopher Few.

73.     Since the shooting, both Stafford and Greenhouse have refused to provide any public statement concerning or any explanation why Greenhouse initiated a pursuit of Christopher and Jeremy, or why they used deadly force against them.  In fact, Stafford and Greenhouse have refused to cooperate in any investigation of the shooting.  Instead, in a cowardly and conspiratorial fashion, both have maintained their silence and, in doing so, they have exacerbated the emotional pain and suffering and mental anguish that plaintiffs have had to endure as a result of this tragedy.

74.     Upon information and belief, on November 4 or 5, 2015, Stafford and Greenhouse met with Terence Grines, Alexandria City Marshal, to discuss the events of November 3, 2015 surrounding the shooting but Stafford and Greenhouse have yet to publicly reveal the substance

of those discussions, why they met with Mr. Grines, or why they would meet with Mr. Grines but not give a statement to the Louisiana State Police investigators regarding the shooting.

75. The actions of Stafford and Greenhouse following the shooting, including their meeting with Grines, but refusal to provide an explanation for their actions to the Louisiana State Police investigators suggests a guilty state of mind.

### Defendants are "Persons" for Purposes of 42 U.S.C. §1983

76. Defendants, Derrick Stafford, Norris Greenhouse, Jr., Jason Brouillette, Kenneth Parnell, Jr. and Floyd Voinche are all natural persons and, therefore, are persons for purposes of this action pursuant to 42 U.S.C. §1983.

77. Defendant, City Court of the Town of Marksville, is a local governmental unit and a body politic created by LA-R.S. §13:2488.51. City Court is not an agency, department or arm of the State of Louisiana. Therefore, City Court is a "person" for purposes of 42 U.S.C. §1983. Defendant, Town of Marksville, is a municipality and political subdivision of the State of Louisiana. The Town of Marksville is not an agency, department or arm of the State of Louisiana. Therefore, the Town is a "person" for purposes of 42 U.S.C. §1983.

78. Defendant, Parish of Avoyelles, is a political subdivision of the State of Louisiana. Parish of Avoyelles is not an agency, department or arm of the State of Louisiana. Therefore, the Parish is a "person" for purposes of 42 U.S.C. §1983.

### Additional Relevant Facts Regarding Norris Greenhouse, Jr. – Acting Under Color of Law

79. At all times relevant hereto, Greenhouse was employed by and acting in the course and scope of his employment as a deputy marshal with City Court, having been hired and appointed as such by Voinche.

16

80.     In working as a deputy city marshal, attempting to stop the Few vehicle, initiating a pursuit of Few, attempting to seize or take Few into custody, using law enforcement equipment and police unit, and in firing his duty weapon at Christopher and Jeremy, Greenhouse was acting under color of law. La-R.S. §13:1881(B).

81.     Greenhouse was initially hired or appointed as a Marksville Ward 2 Deputy City Marshal on December 3, 2014.

### *Additional Relevant Facts Regarding Derrick Stafford – Acting Under Color of Law*

82.     At all times relevant hereto, Stafford was employed by and acting in the course and scope of his employment as a deputy marshal with City Court, having been hired and appointed as such by Voinche.

83.     In working as a deputy city marshal, attempting to stop the Few vehicle, engaging in the pursuit of Few, assisting or backing up Greenhouse, attempting to seize or take Few into custody, using law enforcement equipment and police unit, and in firing his duty weapon at Christopher and Jeremy, Stafford was acting under color of law. La-R.S. §13:1881(B).

84.     Stafford was initially hired or appointed as a Marksville Ward 2 Deputy City Marshal on or about December 3, 2014.

85.     At the time of the shooting, Derrick Stafford was also employed as a city police officer with the Marksville Police Department but was "moonlighting" as a Marksville Ward 2 Deputy City Marshal.  Notwithstanding, at all times relevant hereto including at the time of the pursuit and shooting, Derrick Stafford was subject to the direction, supervision and control of the Marksville Police Department and Town of Marksville.

### *Additional Relevant Facts Regarding Jason Brouillette – Acting Under Color of Law*

86.     At all times relevant hereto, Brouillette was employed by and acting in the course of scope of his employment as a deputy marshal with City Court, having been hired and appointed as such by Voinche.

87.     In working as a deputy city marshal, attempting to stop the Few vehicle, engaging in the pursuit of Few, assisting or backing up Greenhouse, using law enforcement equipment and police unit, and attempting to seize or take Few into custody, Brouillette was acting under color of law. La-R.S. §13:1881(B).

### *Additional Relevant Facts Regarding Kenneth Parnell, III – Acting Under Color of Law*

88.     At all times relevant hereto, Parnell was employed by and acting in the course and scope and his employment as a city police officer with the Town of Marksville.

89.     In working as a police officer employed by Marksville Police Department, assisting or backing up Greenhouse, attempting to stop the Few vehicle, using law enforcement equipment and police unit, and attempting to seize or take Few into custody, Parnell was acting under color of law.

### *Additional Relevant Facts Regarding Floyd Voinche – Acting Under Color of Law*

90.     At all times relevant hereto, Voinche was the duly-elected City Marshal of City Court, and was engaged and performing duties within the course and scope and his office.  All actions attributable herein to Voinche were in furtherance of his position as City Marshal, and executive officer of City Court. Voinche's actions were in furtherance of his statutory duties to "execute the orders and mandates of the court" as well as in furtherance of his authority to preserve the peace within the territorial jurisdiction of City Court and the Town of Marksville.

91.     Thus, at all times material hereto, Voinche was acting under color of law when performing his duties as City Marshal.

### *Facts Regarding the Organization and Policy Making of The Town of Marksville, The City Court of the Town of Marksville, and The Parish of Avoyelles*

92.     The Town of Marksville is a municipality and political subdivision of the State of Louisiana.

93.     The Town of Marksville utilizes and/or employs its own police department known as the Marksville Police Department. The Chief of Marksville Police Department is Elster Smith, Jr. Smith is a "decision maker" and "policy maker" of not only the Marksville Police Department but the Town of Marksville, as well.

94.     Defendant, City Court of the Town of Marksville ("City Court"), is a body politic created by LA-R.S. §13:2488.51 and consists of a city judge, marshal and clerk.

95.     The territorial jurisdiction of City Court extends throughout the Town of Marksville. LA-R.S. §13:2488.51

96.     The shooting sued upon herein occurred within the territorial jurisdiction of City Court and the Town of Marksville.

97.     At all times material hereto, Chief Elster Smith, Jr., Marksville Police Department and Town of Marksville employed Derrick Stafford as a full-time police officer of the Marksville Police Department and had a custom, policy or practice of allowing Stafford to work part-time as a deputy city marshal.

98.     Even when serving as a deputy city marshal, Stafford was still subject to the same ethical, professional, and legal standards and requirements and the same custom, policies and practices expected of Marksville City Police officers.

99.     In addition, on November 3, 2015, Chief Elster Smith, Jr., Marksville Police Department and Town of Marksville employed Kenneth Parnell, III as a full-time police officer of the Marksville Police Department.

100.    At all times relevant hereto, Defendant, Floyd Voinche ("Voinche"), was and has been the duly elected marshal of City Court.  As marshal, Voinche is executive officer of City Court and is authorized to "execute the orders and mandates of the court and in the execution thereof, and in making arrests and preserving the peace, he has the same powers and authority of a sheriff." La-R.S. 13:1881.

101.    Voinche is a "decision maker" and "policy maker" of City Court, Town of Marksville, and the Parish.

102.    At times relevant hereto prior to the shooting, City Court ordered and mandated that Voinche enforce and support the laws of the United States, the Constitution, laws of State of Louisiana, and the ordinances of the Town within the territorial jurisdictional limits of the Town of Marksville.  In fact, upon assuming his office, Voinche took an oath to do this.

103.    In furtherance of the City Court orders and mandates, Voinche obtained certain equipment to be used by and on behalf of the Ward 2 city marshals and deputy city marshals including at least two police patrol cars.  The patrol cars utilized by Greenhouse, Stafford and Brouillette in the pursuit of Christopher and Jeremy were cars obtained by Voinche, on behalf of City Court and the Town, for purposes of executing the orders and mandates of City Court, making arrests and preserving the peace within the territorial jurisdiction of City Court.

104.    As city marshal, Voinche also had authority to appoint one or more deputy marshals that have the same powers and authority as the marshal.  La-R.S. §13:1881(B).  These powers and authority were co-extensive with that of the Avoyelles Parish Sheriff, as well.

20

105.   As city marshal, Voinche is and was responsible for the actions of the deputy marshals he appoints. La-R.S. §13:1881(B). This responsibility arises by operation of Louisiana law and makes no exception for actions or conduct attributable to deputy city marshals that result in the deprivation of rights protected by the United States Constitution and enforceable under 42 U.S.C. §1983.

106.   As city marshal, Voinche appointed Greenhouse, Stafford and Brouillette as deputy city marshals.  This was in furtherance of Voinche's duty to execute the orders and mandates of City Court.

107.   As such, Voinche is responsible for the actions of Greenhouse, Stafford, and Brouillette including the consequences of their actions.  See La-R.S. §13:1881(B).

108.   The authority granted Voinche by statute, and pursuant to the orders and mandates of City Court, the Town and Parish make him a policy maker and decision maker of these defendants.

109.   At all times material hereto, Voinche was acting under color of law when performing his functions as City Marshal.

110.   At times relevant hereto, the Town of Marksville had in force and effect a custom, policy and/or practice that allowed its employees, including Stafford, to hold outside employment including serving as deputy city marshals of City Court and the Town.

111.   City Court and the Town had a policy, custom or practice that required deputy city marshals to carry approved handguns while on duty.

112.   Avoyelles Parish is a local governmental subdivision and political subdivision of the State of Louisiana.  The governing body of Avoyelles Parish is the Avoyelles Parish Police Jury.

113.    The compensation of Voinche, Greenhouse, Stafford and Brouillette was fixed and paid for, at least in part, by the Town of Marksville and Avoyelles Parish.

114.    As deputy marshals, and at all times relevant hereto on November 3, 2015, Greenhouse, Stafford and Brouillette were exercising their authority, as derived from the marshal, Voinche, of "making arrests and preserving the peace" and, therefore, were acting under color of law when they engaged in the pursuit and, ultimately, the unconstitutional seizure and shooting of Few and Jeremy.

115.    At all times relevant to this Complaint, Greenhouse, Stafford and Brouillette, as police officers and deputy city marshals of City Court, were acting under the direction and control of Voinche, City Court, Town of Marksville and the Parish.

116.    At all times relevant to this Complaint, Parnell was acting in the course and scope of his employment as an officer with the Marksville Police Department, was exercising his authority of a police officer, and therefore was acting under color of law when he joined the pursuit and participated in the stop of Vehicle 1 and its occupants, Jeremy and Christopher.

117.    The relationship of City Court vis-à-vis the Town of Marksville and Avoyelles Parish is such that both the Town of Marksville and Avoyelles Parish is the master, employer, and/or supervisor of Floyd Voinche, Norris Greenhouse, Jr., Derrick Stafford, Jason Brouillette, and Kenneth Parnell, III.

118.    City Court, The Town of Marksville and Avoyelles Parish had the authority, right and duty to control, direct and supervise the actions of Voinche, Stafford, Greenhouse, Brouillette and Parnell.

119.    The salaries or compensation of the city judge, marshal, and deputy city marshals was provided, in part, by the Town of Marksville and Avoyelles Parish.

120.     In addition, the day-to-day operating funds of City Court were likewise provided, in part, by the Town of Marksville and Avoyelles Parish.

121.     Along these same lines, a portion of the fines collected for the prosecution of the violation of local ordinances was paid to the Town and a portion of the fines collected for the prosecution of violations of state laws was paid to Avoyelles Parish.

122.     Therefore, in his official capacity as City Marshal, Voinche was a "decision maker" and "policy maker" of City Court, the Town and Parish such that actions or inactions on Voinche's part are attributable and imputable to City Court, the Town and Parish.

123.     In both his individual and official capacity as City Marshal, Voinche was responsible for adopting, promulgating, implementing and enforcing policies, customs or practices pertaining to making arrests and preserving the peace within the City Court's territorial jurisdiction, as well as other customs, policies or practices including customs, policies and practices regarding and governing the screening, hiring, discipline, training, supervision and retaining of deputy city marshals to ensure that each deputy city marshal was properly qualified and trained to perform the duties and functions of a peace officer, including making arrests, preserving the peace, and the constitutional use of deadly force. These hiring customs, policies and practices include the proper scrutinization of the backgrounds of potential deputy city marshal candidates, and the promulgation, enforcement and training on constitutionally-compliant use of deadly force policy.

124.     The need for such policies is so obvious – especially where, as here, the deputy city marshals are armed and have a history of the use of excessive force – that the failure to promulgate and enforce such policies amounts to deliberate indifference to the constitutional rights of those persons encountering the deputy city marshals.

125.    In appointing Stafford and Greenhouse as deputy city marshals, Voinche demonstrated deliberate indifference to the constitutional rights of persons within the territorial jurisdiction of City Court, including Christopher and Jeremy, because Voinche did not properly scrutinize the backgrounds of Stafford and Greenhouse, did not adopt or follow an adequate or proper hiring and retention policy, did not adopt or follow an appropriate training policy, and did not adopt and enforce a constitutionally-compliant use of deadly force policy.

126.    Stafford and Greenhouse had a history of exercising excessive force when making arrests and assisting other law enforcement officers, which history was known or should have been known by Voinche, City Court, the Town, and Parish.

127.    This history included numerous citizen complaints of excessive force, as well as numerous civil lawsuits alleging excessive force on the part of Greenhouse and Stafford.  Many of these complaints and lawsuits were documented in the business records of City Court, the Town of Marksville, and Parish, and/or were a matter of public record.

128.    Voinche did not properly vet Stafford and Greenhouse, or scrutinize their backgrounds prior to appointing them deputy city marshals because neither he, City Court, the Town or Parish had an appropriate policy to screen the backgrounds of candidates or potential appointees, or adequate criteria for the screening of candidates or potential appointees that, if applied, would have not only identified Stafford and Greenhouse as being unfit for appointment but would have caused Voinche to decline or refuse such appointments.

129.    Voinche's appointment, hiring and retention of Stafford and Greenhouse was an exercise of his decision making and policy making authority on behalf of City Court, the Town, and Parish such that his actions are fairly and reasonably imputable to City Court, the Town, and Parish.

24

130.   Voinche's failure to properly vet Stafford and Greenhouse and scrutinize their backgrounds, coupled with City Court, the Town and Parish's failure to have an adequate or proper hiring policy resulted in Voinche appointing two deputy city marshals who had a long history of the use of excessive force that should have excluded them from serving as deputy city marshals.

131.   The long history of excessive use of force, some examples of which will be discussed in this Complaint, was known or should have been known by Voinche, and Voinche's appointment of Stafford and Greenhouse adopted or ratified such history as an acceptable policy, custom or usage of City Court, the Town and Parish.

132.   Moreover, Stafford and Greenhouse's long history of the use of excessive force

133.   Further, Voinche, as City Marshal, was responsible for adopting, implementing and enforcing policies to ensure the proper supervision and training of deputy city marshals in making arrests and in the use of force including the use of deadly force within the contours of the United States Constitution and Louisiana State Constitution.

134.   However, City Court, the Town and Parish lacked a use of deadly force policy, written or otherwise. The need for such policies is so obvious for the safety of the public and the protection of constitutional rights that the lack of such policies constitutes deliberate indifference and a reckless disregard for the public and plaintiffs' constitutional rights.

135.   Voinche and hence City Court, Town and Parish authorized the arming of deputy city marshals (including Stafford and Greenhouse) and it was not only reasonably foreseeable but also a virtual certainty that authorized firearms would be used by deputy city marshals in making arrests and preserving the peace, functions they were authorized to perform by Louisiana

25

statue, and were performing the night of November 3, 2015 when Stafford and Greenhouse pursued and then shot Christopher and Jeremy.

136.    Both Stafford and Greenhouse were authorized by Voinche and City Court to carry firearms or duty weapons in keeping with the custom, policy and practice of Voinche, City Court, Town and Parish.  Despite arming the deputy marshals, these defendants provided no training, prior to arming them or on an ongoing basis, regarding the constitutional limitations of the use of deadly force or "shoot, don't shoot" scenarios that would have enabled them to make objectively reasonable decisions on when to use deadly force, nor did these defendants promulgate and enforce a written constitutionally-compliant use of deadly force policy.

137.    The lack of proper use of deadly force training and "shoot, don't shoot" training, resulted in, was a direct cause of and the moving force behind Stafford and Greenhouse's shooting of Christopher and Jeremy when the circumstances were such that it was not objectively reasonable to use deadly force.

138.    Plaintiffs show that the conduct, acts and/or omissions of Voinche, in both his individual and official capacity, resulted in the implementation, utilization and execution of unconstitutional customs, policies and practices that were a direct and proximate cause and moving force of the shooting of Christopher and Jeremy.

139.    Proper use of deadly force training would have enabled Stafford and Greenhouse to recognize that the facts and circumstances with which they were presented did not justify the use of deadly force, that it was not objectively reasonable to use deadly force and that they should not use deadly force against Christopher and Jeremy.

140.    Proper use of deadly force training would have enabled Stafford and Greenhouse to recognize that neither Christopher nor Jeremy presented an imminent risk of death or great

bodily harm to anyone at or near the scene, and that the use of deadly force was not necessary, warranted or justified for their own self-defense or the defense of others.

141.   Moreover, Voinche's actions or rather policy of inaction in failing to train Stafford and Greenhouse on the constitutional limitations of the use of deadly force constituted deliberate indifference to violations of others' constitutional rights committed by his subordinates, Greenhouse and Stafford.

### *Additional Facts Regarding the Screening, Hiring, Training and Discipline of Peace Officers*

142.   On December 15, 2015, plaintiff's counsel sent Floyd Voinche, in his official capacity as executive officer of City Court, a public records request (the "Voinche Public Records Request") pursuant to the Louisiana Public Records Act, La-R.S. 44:1, *et seq*.

143.   In the Voinche Public Records Request, Voinche, as executive officer of the City Court of the Town of Marksville, was asked to produce for inspection or copying public records concerning, pertaining to and/or regarding, among other things, the following:

> "3.   Policies and procedures pertaining to the hiring, training and discipline of law enforcement officers or deputies employed by the Ward 2 City Marshal's office that were in force and effect on November 3, 2015 and at any time during the ten (10) years preceding that date."

144.   In response to the above request, Voinche indicated that "No such records are known."

145.   This response shows that Voinche, City Court, and Town did not have policies and procedures pertaining to the *hiring, training* and *discipline* of law enforcement officers or deputies employed by the Ward 2 City Marshal's office that were in force and effect on November 3, 2015.

146.    The need for such policies is so obvious for the safety of the public and the protection of constitutional rights that the lack of such policies constitutes deliberate indifference and a reckless disregard for the public and plaintiffs' constitutional rights.

### *Additional Facts Regarding the Lack of a Use of Deadly Force Policy*

147.    Similarly, Voinche, City Court, the Town, and Parish lacked a use of deadly force policy.

148.    By Louisiana statute, La-R.S. §13:1881, City Marshal Voinche and his deputy city marshals, Stafford and Greenhouse, have authority to make arrests and preserve the peace, and within their jurisdiction, the same powers and authority of a sheriff.

149.    The State of Louisiana recognizes that the proper and safe use of a firearm is probably the most important facet of basic law enforcement training.  See *Pre-Academy Firearms Training Home Study Manual, Second Edition, Louisiana Commission on Law Enforcement*.

150.    Because law enforcement contemplates the arming of police officers with duty weapons capable of causing death or great bodily injury, it is incumbent upon law enforcement agencies and agencies employing or supervising police officers to adopt, implement, and enforce appropriate deadly force policies, and to provide police officers such as Stafford and Greenhouse adequate training regarding those policies, in order to ensure the safety of those persons coming into contact with armed deputy city marshals, and to ensure that deadly force would not be used unless it was objectively reasonable to do so.

151.    Here, Voinche, City Court, Town of Marksville, and Parish failed to adopt, implement and enforce a constitutionally-compliant use of deadly force policy and failed to provide adequate training of Stafford and Greenhouse on the constitutional limitations of the use

28

of deadly force, which failures were a direct and proximate cause of and the moving force behind the shooting of Christopher and Jeremy.

152.    A municipality's policy of inaction despite awareness - constructive or actual - that its policy will cause a constitutional violation may be "'the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citing City of *Canton, Ohio v. Harris*, 489 U.S. 378, 395, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). *Converse v. City of Kemah*, 2016 U.S. Dist. LEXIS 141647 * (S.D. Tex. Oct. 12, 2016).  These are standards recognized by the United States Supreme Court and, as decision makers and policy makers, defendants City Marshal Voinche, City Court, Town and Parish should have been well aware of these standards.  Thus, the failure of Voinche, City Court, the Town, and Parish to adopt, promulgate, implement and utilize appropriate use of deadly force standards is, in itself, a policy of inaction and, therefore, a decision to violate the Constitutional rights of those persons coming into contact with deputy city marshals while they are performing their peacekeeping functions.

153.    In the Voinche Public Records Request, Voinche, as executive officer of the City Court of the Town of Marksville, was asked to produce for inspection or copying public records concerning, pertaining to and/or regarding, among other things, the following:

"6.    Policy and Procedure Manual and/or compilation for the Ward 2 City Marshal's office that was in force and effect on November 3, 2015 and at any time during the ten (10) years preceding that date.  This should cover all policies and procedures pertaining to the following subject matter:
    a.    Hiring of police officers and deputy marshals;
    b.    Firing or terminating employment of police officers and deputy marshals;
    c.    Disciplining police officers and deputy marshals;
    d.    "Use of force" and "use of deadly force" policies;
    e.    Training of police officers and deputy marshals;
    f.    Job description for police officers and deputy marshals."

154.    In response to the above request, Voinche indicated that "No such records are known."

155.    In the Voinche Public Records Request, Voinche, as executive officer of the City Court of the Town of Marksville, was asked to produce for inspection or copying public records concerning, pertaining to and/or regarding, among other things, the following:

> "13.    Records concerning, pertaining to and/or regarding the law enforcement training of Norris Greenhouse, Jr.
>
> 14.    Records concerning, pertaining to and/or regarding the law enforcement training of Norris Greenhouse, Jr."

156.    In response to the above requests, Voinche indicated that "No such records are known."

157.    In the Voinche Public Records Request, Voinche, as executive officer of the City Court of the Town of Marksville, was asked to produce for inspection or copying public records concerning, pertaining to and/or regarding, among other things, the following:

> 19.    All memoranda, policies, procedure or other written records concerning, pertaining to and/or regarding the duties, power and/or authority of the City Marshal and deputy marshals to make arrests and preserve the peace (as contemplated by La-R.S. 13:1881)."

158.    In response to the above requests, Voinche indicated that "No such records are known.

159.    The responses provided by Voinche, as executive officer of City Court, prove that on the date of the shooting sued upon herein, City Court and Voinche had *NO* written policy in force and effect concerning, pertaining to and/or regarding (a) the hiring, training and discipline of law enforcement officers or deputies employed by the Ward 2 City Marshal's office; (b) hiring of police officers and deputy marshals; (c) firing or terminating employment of police

officers and deputy    marshals; (d) disciplining police officers and deputy marshals; (e) "use of force" and "use of deadly force" policies; or (f) the training of police officers and deputy marshals.

160.    Voinche is the statutorily-designated executive officer of City Court and is statutorily charged with executing the orders and mandates of City Court, as well as in making arrests and preserving the peace. See La-R.S. §13:1881(A).  As executive officer of City Court, Voinche is a policymaker and decision maker of City Court, the Town of Marksville, and Parish. Voinche is endowed with supervisory authority over his deputy city marshals, for whom he is statutorily responsible (La-R.S. §13:1881(B)), and therefore is liable for the natural consequences of the defendants' failure to implement, enforce and train deputy city marshals on an appropriate use of deadly force and "shoot, don't shoot" policy.

161.    Moreover, the acts and/or omissions of Voinche, in his official capacity, are attributable and imputable to City Court, the Town and Parish.

162.    At the time of the shooting and at all times during the employment or appointment of Stafford and Greenhouse as deputy city marshals, neither Voinche, City Court, Town of Marksville or Parish had in force and effect a written use of deadly force or "shoot, don't shoot" policy required of the deputy city marshals or law enforcement officers making arrests or preserving the peace within the territorial jurisdiction of City Court or Town of Marksville.

163.    The lack of an appropriate use of deadly force policy or "shoot, don't shoot" policy constituted the official policy of Voinche, City Court, Town of Marksville, and Parish. This was in effect a "no policy is the policy" or a "policy of inaction" and constitutes a deliberate indifference to the constitutional rights of plaintiffs and those coming into contact with armed deputy city marshals.

31

164.    Because the discharge of duty weapons and, in particular, the type of firearms with which Greenhouse and Stafford were equipped - .40 caliber semi-automatic handguns loaded with jacketed hollow-point bullets -  on the night of the shooting, presents the reasonable and foreseeable risk of death or great bodily harm, it was necessary that Voinche, City Court, Town of Marksville and Parish adopt, implement and enforce appropriate use of deadly force policies and to train and supervise Stafford and Greenhouse on those policies to ensure the protection of the constitutional rights of those persons coming into contact with armed deputy city marshals including the plaintiffs.

165.    The failure to adopt, implement, and enforce adequate use of deadly force policies and train and supervise Stafford and Greenhouse regarding such policies, constitutes deliberate indifference and reckless and callous disregard for the constitutional rights of those persons encountering armed deputy city marshals including Christopher and Jeremy.

166.    This deliberate indifference is attributable to Voinche, City Court, the Town and Parish.

167.    Plaintiffs next show that the failure to implement, enforce and train the deputy city marshals on an appropriate use of deadly force or "shoot or don't shoot" policy was a direct and proximate cause of Stafford and Greenhouse discharging their duty weapons and shooting Jeremy and Christopher when they did not present an imminent risk or danger of death or great bodily harm, and under the circumstances that existed with these defendants, did not justify the use of deadly force.

168.    Where, as in this case, a warrant did not exist for the arrest of Christopher, probable cause did not exist to arrest Christopher or to otherwise initiate a valid stop or pursuit, Christopher was not suspected of having committed a crime, was committing a crime, or was

about to commit a crime, Christopher's avenue of escape was completely blocked at the end of the pursuit, Christopher was unarmed, Christopher complied with the commands he was given and surrendered with his empty hands in the air, and Stafford and Greenhouse had not determined that an innocent six-year old passenger was in the line of fire, the use of deadly force was objectively unreasonable, and could not and cannot be justified.  Thus, Greenhouse and Stafford's use of deadly force violated the constitutional rights of plaintiffs to be free from unreasonable seizure and excessive force.

### *Additional Facts Regarding the Backgrounds and Hiring of Stafford and Greenhouse*

169.   As plaintiffs have previously alleged, according to La-R.S. §13:1881(B) Voinche is authorized to appoint one or more deputy marshals having the same powers and authority as the marshal but, by statute, Voinche is responsible for the actions of the deputy marshals, including Greenhouse and Stafford.  Specifically, La-R.S. §13:1881(B) states that "[T]he marshal may appoint one or more deputy marshals having the same powers and authority as the marshal, but the marshal shall be responsible for their actions.

170.   Prior to Stafford and Greenhouse being hired as deputy city marshals, both had a long history of the use of excessive force when making arrests or assisting other officers that are documented in numerous citizen complaints to City Court, Voinche, the Town, and Parish and are of record in publicly-filed lawsuits against Stafford and Greenhouse.  Voinche, City Court, the Town, and Parish knew or should have known of this history and declined or rejected the appointment of Stafford and Greenhouse as deputy city marshals and, in the case of the Town, terminated Stafford's employment with the Marksville Police Department.

171.   At all times relevant hereto, City Court of the Town of Marksville, Floyd Voinche, the Town of Marksville, and Parish had indifferent policies, customs, habits, training

and procedures which permitted, allowed or ratified law enforcement officers' use of deadly or excessive force when subjects did not present an imminent threat or risk of death or great bodily harm or force that was otherwise excessive to the need.

172.    In fact, as plaintiffs' earlier allegations made clear at all times material hereto, City Court and Voinche had *NO* written policy in force and effect concerning, pertaining to and/or regarding (a) the hiring, training and discipline of law enforcement officers or deputies employed by the Ward 2 City Marshal's office; (b) hiring of police officers and deputy marshals; (c) firing or terminating employment of police officers and deputy marshals; (d) disciplining police officers and deputy marshals; (e) "use of force" and "use of deadly force" policies; or (f) the training of police officers and deputy marshals.

173.    The Louisiana legislature has found that law enforcement work is of such importance to the health, safety and welfare of the people of this state and is of such a nature as to require education and training of a professional character. La. R.S. § 40:2401

174.    Given the moral certainty that law enforcement officers will be called upon to use force including deadly force when apprehending suspects or otherwise discharging their duties as peace officers, the need to refrain from hiring officers with a history of excessive use of force and to train officers in the constitutional limitations on the use of deadly force is so obvious, that the failure to do so and the failure to adopt, implement, and enforce appropriate and adequate policies to ensure these objectives is properly characterized as deliberate indifference to constitutional rights.  See, for example, *City of Canton v. Ohio*, 489 U.S. 378, 109 S.Ct. 1197 (1989); *Tennessee v. Garner*, 471 U.S. 1 (1985)

175.    In hiring Stafford and Greenhouse, City Court of the Town of Marksville, Floyd Voinche the Town of Marksville, and Parish ratified and accepted their long history of the use of

excessive force and, in so doing, made such excessive use of force their official, custom, policy or practice by ratification or inaction.  Stafford and Greenhouse's history of excessive force and prior bad acts include the following examples.

176. *Aleathia Barbin*

On January 3, 2011, a tow truck driver attempted to repossess Aleathia Barbin's vehicle and a dispute arose prompting the tow truck driver to call the police. After police arrived, Barbin indicated that she needed to remove her belongings from the vehicle and proceeded into her home to retrieve the keys.  After she went inside her home, a Marksville Police Department Officer, while Barbin was holding her infant son, grabbed her by the arm and began to violently place her into handcuffs.  Defendant Stafford joined in the detention and seizure, as well.

177. Stafford then escorted the now handcuffed Barbin towards a nearby police car and tossed her into the backseat.  Once inside and with her hands behind her back, Stafford stunned the young mother with a Taser, a potentially deadly use of force, while she was seated, secured and not a threat to Stafford.

178. As a result of this incident, Aleathia Barbin filed a civil lawsuit on January 3, 2012, against the Marksville Police Department through the Town of Marksville and Derrick Stafford in the 12th Judicial District Court in and for the Parish of Avoyelles in the matter *Aleathia Barbin v. Marksville Police Department through the Town of Marksville & Derrick Stafford, Individually and In His Official Capacity*, No. 21027482, 12th Judicial District Court (the "Barbin suit").  The Barbin suit is a matter of public record of which defendants City Court of the Town of Marksville, Floyd Voinche and The Town of Marksville have actual and/or constructive knowledge.

179.    *Sammy Carmouche*

On June 20, 2011, Stafford responded to a call for assistance by a Marksville Police Department who had handcuffed a suspect by the name of Sammy Carmouche.  While Sammy Carmouche was in handcuffs and in the officer's secured custody, Stafford arrived on scene and discharged his duty Taser into the chest of Sammy Carmouche releasing a charge of electricity through Carmouche's body.  At the time, Carmouche did not present an imminent threat or risk of death or great bodily harm to Stafford, the Marksville Police Department Officer or anyone else at or near the scene.

180.    Upon information and belief, the arrest of Sammy Carmouche and the circumstance surrounding the arrest are part of a file maintained by the Marksville Police Department of which defendants City Court of the Town of Marksville, Floyd Voinche and The Town of Marksville have actual and/or constructive knowledge.

181.    *Kiana Martin*

On December 3, 2012, Kiana Martin was attacked by a boy on a school bus.  After she began to defend herself, the bus driver stopped and called for assistance.  Three Marksville Police Department officers including defendant Stafford arrived on scene and attempted to break up the fight.  Initially, one of the officers jumped on top of the sixteen-year-old Martin and held her down.  Stafford joined in to assist the officer, pressed down on Martin's back and then pulled her arm up with such physical force that she suffered a broken arm.

182.    As a result of the December 3, 2012, a lawsuit seeking civil damages was filed on behalf of Kiana Martin against the Town of Marksville and Derrick Stafford and bears the caption *Donald Martin on behalf of the Minor Child, Kiana Martin v. City of Marksville, et al*, No. 20139981, 12th Judicial District Court, Parish of Avoyelles (the "Martin suit").

183.   _Steven McIntosh_

On or about July 4, 2013, Steven McIntosh was leaving a Fourth of July celebration when an altercation broke out in or near where he was walking. McIntosh was not involved in the altercation.

184.   Officers with the Marksville Police Department responded to the altercation.  One of the officers deployed a dangerous chemical agent by spraying individuals in the area and, in so doing, escalated the altercation and caused a great deal of confusion among those in the area including Steven McIntosh.  During the confusion, McIntosh misplaced the keys to his vehicle and began searching the area in the hopes of finding his keys.  While searching the area, one of the officers suddenly, without warning or provocation, threw McIntosh to the ground.  The officer was assisted by defendants, Norris Greenhouse, Jr. and Derrick Stafford, in the battery against McIntosh.

185.   This event resulted in at least two lawsuits being filed against Derrick Stafford, Norris Greenhouse, Jr. and the City of Marksville, among others.  The caption of these lawsuits include _Steven McIntosh v. Chad Mayeaux, et al_, No. 20140693, 12th Judicial District Court, Parish of Avoyelles (the "McIntosh suit"); and _Tameka Greenhouse, et al v. Johnathan Ducote, et al_, No. 20140696, 12th Judicial District Court, Parish of Avoyelles.

186.   _Patrick Jeansonne_

On or about July 4, 2012, Jeansonne made two calls to the Marksville Police Department to complain about the behavior of Derrick Stafford that he had experienced during an earlier confrontation that occurred in the Town of Marksville at a local parade.  Following the complaint calls, Stafford ordered that another Marksville Police Department officer effect a warrantless arrest of Patrick Jeansonne during which Jeansonne was placed in handcuffs.  Following the

arrest, Stafford arrived, removed the handcuffs, and proceeding to place his own handcuffs on Jeansonne.  Jeansonne was then booked with a misdemeanor charge of disturbing the peace. According to Jeansonne, Stafford used excessive force when applying his handcuffs.

187.    On January 7, 2013, Jeansonne filed a civil suit for damages against Derrick Stafford and Town of Marksville stemming from the events of July 4, 2012 including Stafford's excessive use of force.  The caption of that suit is *Patrick Jeansonne, et ux v. City of Marksville, et al*, No. 20138845, 12th Judicial District Court, Parish of Avoyelles (the "Jeansonne suit").

188.    *Ian Fridge*

Ian Fridge was arrested in Marksville on July 4, 2014 while attending a public festival.

189.    Upon information and belief, there have been other incidents of violence or conduct in which Norris Greenhouse, Jr. and Derrick Stafford have engaged or that bears upon their fitness to have served as a law enforcement officer and that will be revealed through discovery.  By way of example, plaintiffs have information suggesting that Stafford may have been charged with rape, attempted rape or some other sexual crime of violence and that the City Court judge had represented or defended him on those charges.

190.    At all times relevant hereto, Voinche, City Court, the Town and Parish knew or should have known of the above-described incidents involving Stafford and Greenhouse, all of which are recorded in the business records of Voinche, City Court, the Town, and Parish and/or a matter of public record readily available to these defendants.

191.    The above-described incidents reveal and demonstrate a pattern of the use of excessive use of force by Derrick Stafford and Norris Greenhouse, Jr. that has spanned several years and that has been ratified over and over again by the Town of Marksville such that it has become a custom, policy or practice of the Town of Marksville and because the City Court of the

Town of Marksville and Floyd Voinche had actual or constructive knowledge of the reputation, character, conduct, history and background of Stafford and Greenhouse, these events and the prior lawsuits and complaints against Stafford and Greenhouse, or knew or should have known of their prior history of excessive force, the City Court of the Town of Marksville and Floyd Voinche ratified such excessive use of force by appointing Stafford and Greenhouse as deputy city marshals such that the excessive use of force, under the same and similar circumstances as those presented in the events described herein, became and was the custom, policy or practice of the City Court of the Town of Marksville and Floyd Voinche.

192.    The Town, City Court, Parish, and Voinche's ratification of these prior acts of excessive use of force by Stafford and Greenhouse became their official custom, policy or practice and are a direct cause of the shooting.  Moreover, the pattern of use of excessive force on the part of Stafford and Greenhouse is sufficiently numerous and common, and is such a pervasive practice of these officers, that the use of excessive force is a practice, custom and policy fairly attributable to the Town, City Court and Voinche and, in this case, was the moving force and a direct cause of the shooting of Christopher and Jeremy and a violation of plaintiffs' constitutional rights.

### *Additional Facts Regarding Chief Elster Smith, Jr. and Floyd Voinche*

193.    Voinche is a decision maker and policy maker of City Court and Town of Marksville.  Smith is a decision maker and policy maker of the Marksville Police Department and Town of Marksville.

194.    Both Voinche and Smith possess the authority to make decisions and policies on behalf of City Court and Town of Marksville, and adopt, promulgate, implement, and enforce policies and procedures applicable to City Court and, in particular, the functions of the deputy

39

city marshals and peace officers serving within the territorial jurisdiction of City Court and the Town of Marksville.

195.    Through the exercise of their policy making and decision making functions, Voinche and Smith have encouraged, tolerated and/or ratified the use of police tactics by Greenhouse and Stafford, and perhaps other law enforcement officers in their respective departments, which are improper, constitute an excessive use of force, and that result in the violation of rights protected by the United States Constitution and Louisiana State Constitution.

196.    Voinche and Smith have tolerated and ratified the use of excessive force by both Stafford and Greenhouse, have failed to implement and enforce appropriate use of force policies, have failed to implement and enforce appropriate use of deadly force policies, and have essentially adopted, implemented, enforced, accepted and ratified a policy of "no policy is the policy" when it comes to the use of excessive or deadly force by peace officers under their direct line of supervision.

197.    Voinche, City Court and the Town also lacked an appropriate and effective discipline policy that not only fails to prevent or discourage an excessive use of force but which effectively served to accept or ratify the unconstitutionally excessive use of force such that the lack of an adequate discipline policy has become the *de facto* policy of City Court and the Town. The long history of use of excessive force and other prior bad acts by Stafford and Greenhouse shows that they have never been disciplined in such a manner as to correct or prevent their further abuses and excessive use of force.  The lack of disciplinary consequences was a direct cause of their use of deadly force against Christopher and Jeremy, as they used excessive force as they have been allowed to do for years.

### *Additional Facts Regarding Progressive*

198.    On November 3, 2015, Progressive had in force and effect a policy of automobile liability insurance that provided automobile liability insurance coverage on the two Marksville Ward 2 City Marshal patrol units, previously described herein as Vehicle 2 and Vehicle 3.  The Progressive policy provided coverage for the acts, omissions, and fault attributable to Greenhouse and Stafford described in this Complaint and, therefore, is liable for plaintiffs' injuries and damages.

199.    Vehicles 2 and 3 were uniquely designed, manufactured, equipped and intended to be used as police patrol units.  As such an intended and actual purpose of such vehicles was to engage in police pursuits and otherwise as a means to apprehend persons suspected of having committed crimes.

200.    When Vehicles 2 and 3 were stopped at the dead-end corner of the intersection of Martin Luther King, Jr. Street and Taensas Street, they were situated in such a way as to block Few's vehicle from any avenue of escape or further movement on the roadways, and the lights on Vehicles 2 and 3 were used to illuminate Few's vehicle and Few – the targets of Greenhouse and Stafford's gunfire.

201.    Greenhouse and Brouillette's tactical use of Vehicles 2 and 3 to block Few's escape and to illuminate Few when firing their duty weapons constitutes a use of the vehicles for which Progressive provides liability coverage.  In that the shooting took place at night, after dark, the headlights of the police units were used to illuminate the officers' targets.

202.    Therefore, Progressive is liability, jointly, severally, and/or *in solido* with Greenhouse and Stafford for the injuries and damages plaintiffs' have suffered.

### *Additional Facts Regarding Parnell's Use of Vehicle*

203.    During the pursuit and at the time of the shooting, Parnell was using a patrol car ("Vehicle 4") owned by, in the custody or under the control, or *garde* of the Town.  To the extent the Town has automobile liability coverage under an automobile liability insurance policy or other risk and indemnity agreement, such insurer or indemnitor is liable for the claims, rights and causes of action sued upon herein because Parnell's use of the vehicle lights to illuminate Few and Few's vehicle assisted Greenhouse and Stafford to target Few and Jeremy in the same manner as Vehicles 2 and 3.

### *Additional Facts Regarding the Claims of Candace Few*

204.    At the time of the shooting, Vehicle 1 was owned by Candace Few, who permitted Christopher to use and operate her vehicle.

205.    As a result of the gunshots fired by Stafford and Greenhouse, Candace's vehicle was damaged.  The damage was caused not only by the gunshots themselves but also from the bleeding of the gunshot victims.  The cost of repairing the vehicle exceeds its value.

206.    Defendants are liable to Candace Few for her property damages and loss of use of her vehicle.

### *Additional Facts Regarding Damages*

207.    Plaintiffs sustained damages, both general and special, as a result of the mortal wounds inflicted upon and the death of Jeremy Mardis, and the gunshot wounds inflicted upon Christopher Few.

208.    Jeremy Mardis was the six-year old child of Christopher Few and Catherine Mardis.  As a result of Jeremy's death, Christopher Few and Catherine Mardis have suffered a

loss of their son's love, companionship and affection, and they have suffered loss of society and consortium, mental anguish and anxiety, as well as emotional distress.

209.    Plaintiffs would also show that prior to his death, Jeremy suffered a tremendous amount of pain, mental anguish and emotional distress.  Plaintiffs are entitled to recover from the defendants damages for Jeremy's physical pain and suffering prior to death, as well as his emotional distress and suffering, and mental anguish and anxiety prior to death.

210.    Christopher Few and Catherine Mardis are entitled to recover these damages from the defendants.

211.    Christopher Few was present and viewed the shooting of his son, Jeremy. Because of witnessing these tragic events, Christopher has suffered mental anguish and emotional distress. Christopher is, therefore, entitled to recover these damages.

212.    By having sustained serious injuries due to the gunshot wounds, Christopher Few was hospitalized for an extended period.  During that time, Christopher was forced to miss Jeremy's funeral.  This caused further emotional distress and mental anguish and anxiety for which defendants are liable, as well.

213.    In addition, Christopher Few is entitled to damages, both general and special, because of his own injuries damages.  Because of the gunshot wounds, Christopher sustained serious injuries to his head and chest, among other areas of his body.  Christopher has experienced both physical and mental pain and suffering, mental anguish and anxiety, emotional distress, scarring and disfigurement, and other general damages, as well as special damages such as medical expenses, and low wages.  Christopher Few is entitled to recover these damages from the defendants.

214.    Plaintiffs are entitled to recover compensatory damages under 42 U.S.C. §1983 for all injuries suffered because of the violation of their constitutional rights under the Fourth and Fourteenth Amendment of the United States Constitution.  These compensatory damages include plaintiffs' actual losses, physical pain and suffering, mental anguish, anxiety, and emotional distress, as well as all such other general and special damages suffered because of the violations alleged in this Complaint.

215.    Plaintiffs further show that under 42 U.S.C. §1983, they are entitled to recover punitive damages from the defendants sued in their individual capacities to include Stafford, Greenhouse, Voinche, Brouillette and Parnell. As more particularly alleged throughout this Complaint, Stafford and Greenhouse acted with an evil motive or demonstrated reckless indifference to the constitutional rights of the plaintiffs when they intentionally began shooting and killed Jeremy and critically injured Christopher under circumstance that did not warrant or justify the use of deadly force.

216.    Stafford, Greenhouse, Brouillette and Parnell are guilty of acting with an evil motive or demonstrated reckless indifference to the constitutional rights of the plaintiffs when they failed to render or delayed the rendering of first aid and medical attention to Jeremy and Christopher.

217.    Voinche is guilty of acting with an evil motive or demonstrated reckless indifference in his hiring of Stafford and Greenhouse both of whom had long histories of the use of excessive force which was known or should have been known to Voinche, and in failing to adopt, promulgate and enforce an adequate use of deadly force policy, to adequately train Stafford and Greenhouse on the use of deadly force and for such other acts and omissions described in this Complaint.

218.    The conduct of the defendants sued in their individual capacities merit an award of punitive damages.

## PLAINTIFFS' CLAIMS, RIGHTS AND CAUSES OF ACTION

219.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint in each of the Counts, whether specifically stated or not. It is plaintiffs' intent that all factual allegations contained within this Complaint, including the exhibits specifically incorporated in the Complaint by reference, are applicable to each of plaintiffs' claims, rights and causes of action in order to provide contextual specificity.

220.    Plaintiffs assert claims, rights and causes of action arising from violations and deprivations of their rights arising under the United States Constitution, including the Fourth and Fourteenth Amendments, which are enforceable under 42 U.S.C. §§1983 & 1988.  Plaintiffs seek compensatory damages, punitive damages (against the defendants sued in their individual capacities), attorney fees (under 42 U.S.C. §1988) and all taxable costs. Plaintiffs also assert claims, rights and causes of action arising under Louisiana state law including La-C.C. arts. 2315, 2315.6 2316, 2317 and 2320, the Louisiana Revised Statutes, and for violations of Article I, Sections 2 & 5 of the Louisiana Constitution.

## COUNT I

42 U.S.C. §1983 – General Statement Regarding Claims Applicable to All Defendants

221.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts set forth in the remainder of the Complaint, as if fully set forth herein.

222.    This Count is applicable to all defendants.

Plaintiffs bring this action under 42 U.S.C. §1983.

45

223.    42 U.S.C. §1983 provides that:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

224.    While 42 U.S.C. §1983 is not itself a source of substantive rights, it does provide a method for vindicating federal rights elsewhere conferred. *Graham v. Connor*, 490 U.S. 386 (1989).

225.    Here, plaintiffs seek vindication of certain rights conferred upon them under the Fourth and Fourteenth Amendments to the United States Constitution including the rights to be free from unreasonable seizure and excessive force that defendants violated on November 3, 2015.

226.    Plaintiffs bring these against defendants, Derrick Stafford, Norris Greenhouse, Jr., Jason Brouillette and Kenneth Parnell, III in their individual capacities; and Floyd Voinche, in both his individual and official capacities.  Plaintiffs also bring these claims against City Court, the Town and Parish for "municipal liability" under *Monell v. Dept. of Soc. Services of New York*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978) for the improper screening of Stafford and Greenhouse's backgrounds, for the hiring or appointment of Stafford and Greenhouse as deputy city marshals, for failing to properly train and supervise Stafford and Greenhouse regarding the constitutional limitations of the use of deadly force, for the failure to

promulgate and operationalize a constitutionally-compliant use of deadly force policy, among other claims described herein including the deliberate indifference to the protection of plaintiffs' constitutional rights.  Jeremy's death, and plaintiffs' injuries and damages were the result of official policy, custom, or practice of these defendants, the act of an official policy maker attributable to these defendants, and/or the direct result of deliberate indifference attributable to these defendants.

## COUNT II

### 42 U.S.C. §§1988 – Claim for Attorney Fees – Applicable to All Defendants

227.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

228.    This Count is applicable to all defendants.

229.    Plaintiffs also bring this action under 42 U.S.C. §1988. 42 U.S.C. §1988 provides for an award of attorney's fees to prevailing plaintiffs in actions under 42 U.S.C. §1983. Plaintiffs submit that an award of attorney fees would not be unjust and, therefore, plaintiffs seek an award of attorney fees for which defendants are liable.

230.    Plaintiffs have had to retain counsel to prosecute their claims, rights and causes of action against these defendants and, therefore, plaintiffs and their counsel are entitled to an award of attorney fees.

## COUNT III

### Plaintiffs Seek Damages for Violations of 42 U.S.C. §1983 – Applicable to All Defendants

231.    Plaintiffs suffered damages caused by defendants' violations of 42 U.S.C. §1983, and the deprivation of their constitutionally-protected rights.  The damages include

compensatory damages, both general and special, as well as prejudgment interest on their compensatory damages.

232.    Christopher Few's compensatory damages arising as a result of his own injuries include, but are not limited to his pain and suffering, mental anguish and emotional distress, medical bills, and lost wages.

233.    Christopher Few and Catherine Mardis, as the natural parents of Jeremy Mardis, have also suffered damages because of his death.  These damages include their loss of decedent's life, loss of companionship, service and society, emotional distress, and hedonic damages or the pleasurable value of Jeremy's life.  Plaintiffs are also entitled to recover "survival" damages for the predeath pain and suffering, and mental and emotional distress Jeremy suffered after being shot and prior to his death.

234.    Plaintiffs are also entitled to recover attorney fees under 42 U.S.C. §1988, as well as all taxable costs.

235.    Candace Few is entitled to recover for the property damages to her vehicle and the loss of use of that vehicle.

236.    Finally, the defendants sued in their individual capacity including Derrick Stafford, Norris Greenhouse, Jr., Jason Brouillette and Kenneth Parnell, III are liable for punitive damages.

## **COUNT IV**

### 42 U.S.C. §1983 - Plaintiffs' General Statement Regarding Claims for
### Deprivation of Rights Protected by the Fourth and Fourteenth Amendments
### To The United States Constitution –
### Applicable to All Defendants

237.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

238.    This Count is applicable to all defendants.

239.    Plaintiffs also bring this action under 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution for deprivation of their constitutionally-protected rights.  These rights include due process and equal protection under the Fourteenth Amendment, as well as rights guaranteed under the Fourth Amendment such as the right to be free from unreasonable seizure and excessive force.

240.    The Fourth Amendment of the U.S. Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

241.    Section 1 of the Fourteenth Amendment of the United States Constitutions says:

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

242.    Plaintiffs show that defendants, Derrick Stafford, Norris Greenhouse, Jr., and Jason Brouillette, while acting in the course and scope of their employment with City Court and the Town of Marksville as deputy city marshals, and Kenneth Parnell, III, while in the course and scope of his employment with the Town of Marksville as an office of the Marksville Police

Department, committed acts under color of law, and deprived plaintiffs of rights secured by the Fourth and Fourteenth Amendment to the United States Constitution.

243.    The defendants, while acting in their capacities as peace officers, deprived Jeremy Mardis and Christopher Few of liberty without due process of law, made an unreasonable seizure of their person, and thereby deprived plaintiffs of their rights, privileges and immunities as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution.   These rights include the right to be free from unreasonable seizure and the use of excessive force.

244.    By using the deadly and excessive force described in this Complaint when it was not objectively reasonable to do so, Stafford and Greenhouse denied Jeremy Mardis of his constitutionally protected right of life and liberty and denied Christopher Few of his constitutionally protected right of liberty, all without due process of law.

245.    The defendants are liable to plaintiffs for all compensatory damages, attorney fees, punitive damages and costs to which they are entitled under the applicable law.

## COUNT V

### Excessive Force by Unlawful Use of Deadly Force – Deprivation of Rights Under the Fourth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. §1983 – Liability of Derrick Stafford and Norris Greenhouse, Jr.

246.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

247.    This action is brought against Derrick Stafford and Norris Greenhouse, Jr., each in their individual capacities, pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. §§1983 & 1988.

50

248.     Plaintiffs seek all damages to which they are entitled under the law including compensatory damages (both general and special damages), punitive damages, attorney fees and costs.

249.     The conduct and actions of defendants, Derrick Stafford and Norris Greenhouse, Jr., while in the course and scope of their employment as deputy city marshals, in shooting and killing Jeremy Mardis, and shooting and critically wounding Christopher Few, was excessive and objectively unreasonable, was done intentionally, willfully, maliciously, and with deliberate indifference and reckless disregard for the natural and probable consequences of their acts, was done without justification, and was designed to and did cause serious physical and emotional pain and suffering, and death, in violation and deprivation of plaintiffs' constitutionally-protected rights under 42 U.S.C. §1983, and the Fourth and Fourteenth Amendments to the United States Constitution including the right to be free of unreasonable seizure and the right to be free from the use of excessive, unreasonable, and unjustified force and especially deadly force.

250.     At all times material hereto, Stafford and Greenhouse, were acting under color of state law as peace officers, agents and employees of defendants, City Court and Voinche, and were acting in the course and scope of such employment as deputy city marshals when they shot and killed Jeremy, and shot and injured Few.

251.     At the time of the events that occurred on November 3, 2015, it was clearly established that law enforcement officers such as Stafford and Greenhouse could not use deadly force against a person that did not pose an actual and imminent threat of death or great bodily harm.  This is particularly true where a person has peacefully surrendered by placing his unarmed hands in the air indicating his submission to law enforcement authority and, therefore,

did not and could not otherwise create or present an actual or imminent threat of death or great bodily harm to anyone in the area.

252.    Any reasonable law enforcement officer knew or should have known of these constitutionally-protected rights at the time of the pursuit and at the time of the shooting of Christopher and Jeremy, as they were clearly established and were or should have been a part of each officers' training.

253.    Moreover, in connection with their employment as deputy marshals for City Court of the Town of Marksville and City Marshal Floyd Voinche, both Stafford and Greenhouse undertook an oath to "support the Constitution and Laws of the United States and the Constitution and Laws of this State," of which the rights and protections afforded by the Fourth and Fourteenth Amendments of the United States Constitution are included.

254.    Plaintiffs show that on November 3, 2015, Norris Greenhouse, Jr. and Derrick Stafford did intentionally use deadly and excessive force when they discharged their duty weapons and shot and killed Jeremy Mardis, and shot and critically wounded Christopher Few.

255.    At the time Stafford and Greenhouse discharged their duty weapons, they knew or should have known that bullets fired at Christopher Few and Jeremy Mardis were certain or reasonably likely to cause death or great bodily harm to those at whom they were shooting, as well as those persons in the line of fire.

256.    Force is excessive, and therefore violates the Fourth Amendment of the United States Constitution, if it is not reasonable in light of the circumstances facing the officer.  See *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865 (U.S. 1989) The facts and circumstances of this case show that Stafford and Greenhouse's act of shooting Christopher and Jeremy was clearly and objectively unreasonable in light of the particular circumstances facing these officers.

257.     At the time of the shooting, Christopher had his empty, unarmed hands raised in the air, clearly visible to both Stafford and Greenhouse, and he did not present a risk of death or great bodily harm to anyone at the scene including any of the officers at the scene.  Further, because of the positioning of the officers at the scene including Greenhouse, Stafford, Brouillette and Parnell at the time the weapons were fired, none of these officers were in imminent danger or risk of death or great bodily harm by the actual or potential movement of Vehicle 1.

258.     In fact, the evidence shows that Greenhouse, Stafford, Brouillette and Parnell were anywhere from sixteen (16') to forty (40') feet away from and perpendicular to Vehicle 1 such that any movement forwards or backwards of Vehicle 1 would not have presented a risk of death or great bodily harm.

259.     In fact, Parnell's body camera video and other evidence will show that when Stafford and Greenhouse discharged their duty weapons at Vehicle 1, Christopher and Jeremy, Christopher Few's empty hands were in the air demonstrating that he was surrendering to the authority of the law enforcement officers at the scene and, thus, did not pose an imminent danger or threat of death or great bodily harm.

260.     Under the circumstances, Stafford and Greenhouse's act of shooting their duty weapons at Christopher and Jeremy was excessive and violated Christopher and Jeremy's Fourth and Fourteenth Amendment rights because the amount of force used was not and could not be considered reasonable by any objectively reasonable police officer in the same or similar circumstances.

261.     At the time of the shooting, Parnell was at the scene in very close proximity to both Stafford and Greenhouse and did not fire his duty weapon because he did not fear for his life.

53

262.     Both immediately before and at the time of the shooting, none of the police officers at the scene were physically in a position of imminent danger or risk of death or great bodily harm that might have been presented by movement of Christopher's vehicle, and Christopher's hands were empty and in the air such that it was clear he was not brandishing a weapon.  Christopher had surrendered to the law enforcement officers at the scene – as he had been ordered to do - and posed no imminent danger or threat of death or great bodily harm to anyone.  Thus, Stafford and Greenhouse's actions of shooting Christopher and Jeremy were objectively unreasonable under the circumstances.

263.     At the time Stafford and Greenhouse used deadly force against Jeremy and Christopher, both Jeremy and Christopher had been unreasonably seized by Stafford, Greenhouse, Brouillette and Parnell. Christopher was the driver of Vehicle 1 and Jeremy was a passenger in Vehicle 1. All avenues of travel or means of so-called escape were blocked by Greenhouse, Brouillette and Parnell's placement of their respective police units.  This effected a seizure of Jeremy and Christopher that was unreasonable.

264.     Leading up to the unreasonable seizure, the defendants did not have reasonable or probable cause to arrest or even stop Christopher Few.  There was no warrant for Christopher's arrest, and the defendants had no evidence indicating that he had committed a crime, was committing a crime or was not about to commit a crime.  The seizure was unreasonable and a deprivation of plaintiffs' constitutional rights.

265.     During this seizure, Stafford and Greenhouse fired their service weapons at Christopher and Jeremy and, in so doing, fatally wounded Jeremy and critically wounded Christopher.  As set forth in other parts of this Complaint, the circumstances with which Stafford and Greenhouse were presented in the moments leading up to the shooting and at the time they

fired their weapons were such that it was objectively unreasonable for them to have used deadly force against Christopher and Jeremy.

266.    Stafford, Greenhouse, Brouillette and Parnell are liable for all damages plaintiffs have suffered because of their unreasonable seizure of Christopher and Jeremy, and Stafford and Greenhouse are liable for all damages caused by their objectively unreasonable use of deadly force against Jeremy and Christopher.

## COUNT VI

Unreasonable Seizure
Deprivation of Rights Under the Fourth and Fourteenth Amendments
of the United States Constitution and 42 U.S.C. §1983 –
Liability of Derrick Stafford and Norris Greenhouse, Jr.,
Jason Brouillette and Kenneth Parnell, III

267.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

268.    Stafford, Greenhouse, and Brouillette, while acting in the course and scope of their employment as deputy city marshals of City Court and Town of Marksville and Parnell, as an officer with Marksville Police Department, used their department-issued police vehicles to block Vehicle 1 so as to prevent any movement or travel of Christopher and Jeremy, without lawful reason or justification.  Stafford, Greenhouse, Brouillette and Parnell's actions constituted an unreasonable seizure of Jeremy and Christopher.

269.    In addition, Stafford and Greenhouse's use of deadly force against Christopher and Jeremy constituted an unreasonable seizure of them, as well.

270.    Stafford, Greenhouse, Brouillette and Parnell's actions in effecting a seizure of Jeremy and Christopher were objectively unreasonable.

55

271.    Stafford, Greenhouse, Brouillette and Parnell's unlawful and unreasonable seizure of Jeremy and Christopher were a direct and proximate cause of the shooting, Jeremy's death and Christopher's injuries.  Thus, Stafford, Greenhouse, Brouillette and Parnell are liable for the natural and probable consequences of having unreasonably seized Jeremy and Christopher, including the damages plaintiffs have suffered as a result of same.

272.    Because Stafford, Greenhouse, Brouillette and Parnell's actions resulted in and were a direct cause of Jeremy Mardis' death and severe injuries to Christopher Few, they are liable to plaintiffs for all damages they have suffered.

## COUNT VII

### 42 U.S.C. §1983 – Fourteenth Amendment to the United States Constitution – Violation of Substantive Due Process Rights Denial of Familial Relationship

273.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

274.    Plaintiff, Few and Mardis, had a cognizable interest under the due process clause of the Fourteenth Amendment of the United States Constitution in being free from state actions that cause unwarranted interference with the plaintiffs' right to familial relationship with the decedent, Jeremy.

275.    Few and Mardis are the natural parents of Jeremy and are within the class of beneficiaries entitled to bring a wrongful death and survival action for damages under 42 U.S.C. §1983.

276.    Stafford and Greenhouse's intentional acts, omissions, conduct, and fault caused and resulted in the tragic death of Jeremy and, therefore, deprived plaintiffs, Few and Mardis, of

their familial relationship with the decedent.  In firing their duty weapons when Few held his

empty hands in the air, and neither Few nor Jeremy posed an imminent danger or threat of

danger of death or great bodily harm to anyone, shocks the conscience.

277.    Moreover, Stafford and Greenhouse's deliberate indifference to the serious

medical need of Jeremy by failing to render any sort of urgent medical care or first aid including

failing to make attempts to stop Jeremy's bleeding or implement resuscitative measures, violates

not only the constitutionally protected rights of Jeremy but those of his parents, Christopher Few

and Catherine Mardis, as well.

278.    Stafford and Greenhouse's intentional acts, omissions, conduct, and fault did not

comply nor were they consistent with any legitimate law enforcement objective.

279.    As a direct result of Stafford and Greenhouse's intentional acts, omissions,

conduct, and fault and their deliberate indifference to plaintiffs Few and Mardis' constitutional

right to the enjoyment of and exercise their familial relationship with their six-year-old son,

Jeremy, Few and Mardis have been deprived of the life-long love, companionship, comfort,

support, society, care and sustenance of the decedent, and will continue to be so deprived.

280.    By virtue of the Stafford and Greenhouse's violation of plaintiffs' constitutional

rights, they are liable for the following:

a.      Decedent's physical pain and suffering prior to death;

b.      Decedent's mental anguish and anxiety prior to death;

c.      Scarring and disfigurement suffered prior to death;

d.      Decedent's funeral expenses;

e.      Plaintiff's loss of love, affection, society, consortium and services;

f.      Plaintiff's mental anguish and anxiety;

57

g.     Plaintiff's loss of support;

h.     Medical and related expenses; and

i.     Punitive damages;

j.     Reasonable attorney fees and costs under 42 U.S.C. §1983 and 42 U.S.C. §1988;

l.      Any and all such other damages, both general and special, which will be proved

at the trial hereof and otherwise as allowed by law."

281.    Stafford and Greenhouse's intentional acts, omissions, conduct, and fault caused and resulted in the denial or violation of Christopher Few's constitutionally protected rights of his person and liberty, as well.

282.    The acts and omissions of Stafford and Greenhouse described herein and that constitute violations of plaintiffs' rights under the United States Constitution including the Fourth and Fourteenth Amendments have caused plaintiffs damages for which these defendants are liable. These damages including, but are not limited to, general and special damages, attorney fees, and costs for which defendants are liable.

## COUNT VIII

### 42 U.S.C. §1983 –Supervisory Liability of Floyd Voinche – Individual Capacity

283.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

284.    Plaintiffs show that Floyd Voinche, in his individual capacity, is liable to plaintiffs' for violation of their constitutional rights for (1) his own culpable action or inaction in failing to properly screen the background of Stafford and Greenhouse, (2) his own culpable action or inaction in failing to adopt, implement and enforce an adequate hiring and retention

policy, (3) his own culpable conduct in failing to promulgate and enforce a constitutionally-compliant use of deadly force policy, (4) his own culpable conduct in failing to adequately train Stafford and Greenhouse on the constitutional limitations of the use of deadly force, and (5) for conduct that shows a deliberate indifference to the constitutionally-protected rights of those with whom deputy city marshals come into contact while in the course and scope of their employment.

285.    Plaintiffs' Complaint shows that both Stafford and Greenhouse have a history of using excessive force when making arrests, assisting other officers in making arrests, and otherwise in preserving the peace.

286.    Adequate scrutiny of the background of Stafford and Greenhouse would lead any reasonable policymaker to conclude that the plainly obvious consequence of the decision to (1) forego establishing adequate hiring guidelines that ensure that only candidates possessing the proper skills and policing demeanor are hired; and (2) to hire candidates that have a history or background of the use of excessive force when making arrests or assisting other officers in making arrests and otherwise in keeping the peace, would be the deprivation of a third party's federally protected rights and, therefore, Voinche's failure to conduct such adequate scrutiny of the background of Stafford and Greenhouse, and thus his hiring of the two officers who have a long and documented history of using excessive force when making arrests or assisting other officers, amounts to deliberate indifference to the constitutionally-protected rights of persons coming into contact with such officers, including Jeremy and Christopher.

287.    Here, a full review of Stafford and Greenhouse's backgrounds reveal that they both have a history of using excessive force when making arrests or assisting other officers as evidenced by the numerous documented citizen complaints and lawsuits against them and the

law enforcement agencies with which they were employed.  In fact, the documented complaints and lawsuits are so numerous that any reasonable supervisor, policymaker or decision maker in Voinche's position of authority to hire would be compelled to conclude that their continued use of excessive force is not just likely but rather a plainly obvious consequence of the decision to hire them.

288.     Similarly, plaintiffs show that Floyd Voinche, in his individual capacity, is liable to plaintiffs' for violation of their constitutional rights for (1) his own culpable action or inaction in the training, supervision, or control of his subordinates and, in particular, Stafford and Greenhouse; and/or (2) for conduct that shows a deliberate indifference to the constitutionally-protected rights of those with whom deputy city marshals come into contact while in the course and scope of their employment, including Jeremy and Christopher.

289.     "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). A supervisor may also be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

290.     Here, Voinche (1) failed to supervise or train Stafford and Greenhouse on the constitutional limitations of use of deadly force; (2) the failure to properly train and supervise Stafford and Greenhouse caused them to use and was a moving force behind their use of deadly force when it was not objectively reasonable to do so which resulted in Jeremy Mardis being shot to death and Christopher Few being shot and critically injured in violation of plaintiffs'

constitutionally-protected rights; and (3) because Voinche failed to adopt, promulgate, enforce

and train his subordinates on a constitutionally-compliant use of deadly force policy, especially

when the background of his subordinates revealed a propensity to use or history of using

excessive force (such as in the case of Stafford and Greenhouse), his failure to train or supervise

amounts to deliberate indifference.

291.    Voinche hired deputy city marshals who possessed the propensity to use

excessive force, armed them with lethal weapons, did not train them on the constitutional

limitations on the use of deadly force, did not provide them with a written use of deadly force

policy, did not provide ongoing "shoot, don't shoot" training, and then authorized them to go out

into the public to make arrests and otherwise preserve the peace while armed with deadly

weapons.  Such reckless disregard for the safety of persons with whom these deputy city

marshals would come into contact – including the plaintiffs – amounts to deliberate indifference

to the plaintiffs' constitutionally-protected rights for which Voinche is liable in his individual

capacity.

292.    Well before Voinche ever appointed Stafford and Greenhouse, the United States

Supreme Court, in discussing municipal liability for failure to train, observed in *City of Canton v.*

*Harris*, 489 U.S. 378 (U.S. 1989):

> For example, city policymakers know to a moral certainty that their police
> officers will be required to arrest fleeing felons. The city has armed its officers
> with firearms, in part to allow them to accomplish this task. Thus, the need to
> train officers in the constitutional limitations on the use of deadly force, see
> *Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be "so obvious," that
> failure to do so could properly be characterized as "deliberate indifference" to
> constitutional rights.

293.    The legal principles and law discussed in *City of Canton v. Harris*, 489 U.S.

378 (U.S. 1989) *Tennessee v. Garner*, 471 U.S. 1 (1985) set forth standards or expectations of

61

policymakers – and supervisors - such as Voinche.  Voinche knew or should have known that the need to train officers in the constitutional limitations on the use of deadly force is so obvious that the failure to do so constitutes deliberate indifference to constitutional rights.  This is especially so when the subordinates have a history of the use of excessive force when making arrests or assisting other officers – as in this case.

294.   In fact, upon taking his office as City Marshal, Voinche took an oath to support and uphold the Constitution and Laws of the United States and the Constitution and Laws of this State.  Embodied in that oath, as supervisor, was a duty to train and supervise his subordinates in the constitutional limitations and contours of the use of deadly force.

295.   Notwithstanding, Voinche failed to promulgate a use of deadly force policy, written or otherwise, or train Stafford and Greenhouse in the constitutional limitations on the use of deadly force.  Moreover, Voinche having actual or constructive knowledge of the background of Stafford and Greenhouse's history of use of excessive force, citizen complaints and lawsuits, makes Voinche's failure to promulgate a use of deadly force policy or to train Stafford and Greenhouse in the constitutional limitations on the use of deadly force, substantially more callous and reckless, and amounts to deliberate indifference to the constitutional rights of the plaintiffs and others who come into contact with these armed deputy city marshals.

## COUNT IX

42 U.S.C. §1983 – Violation of Fourth and Fourteenth Amendments
Supervisory Liability of Floyd Voinche
In His Official Capacity and Municipal Liability of City Court, and Liability of City Court,
Town of Marksville, And Parish of Avoyelles –
Custom, Policy or Practice and Deliberate Indifference

296.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

297.    This Count is brought against Floyd Voinche, in his official capacity, as City Marshal of City Court, City Court and the Town of Marksville.  By statute, Voinche is the executive officer of City Court and, therefore, is a policymaker and decision maker of City Court and Town of Marksville.

298.    Plaintiffs show that City Court, Town of Marksville and the Parish are liable under 42 U.S.C. §1983 because the deprivation of plaintiffs' constitutionally-protected rights, arising under the Fourth and Fourteenth Amendments, occurred as a result of one or more customs, policies or practices of City Court, Town of Marksville, and Parish and that of officials such as Voinche and Smith, both policy makers and decision makers, whose acts may fairly be said to be those of City Court, Town of Marksville and the Parish.

299.    These defendants are also liable because of their deliberate indifference to the constitutional rights of the plaintiffs.

300.    By statute, Voinche has the authority to decide who to hire as deputy city marshals and is responsible for their actions.

301.    Plaintiffs show that Floyd Voinche, in his official capacity as City Marshal of City Court, City Court and Town of Marksville are liable to plaintiffs for depriving them of constitutionally-protected rights.

302.    The allegations set forth in the preceding **Count VIII - <u>42 U.S.C. §1983 – Supervisory Liability of Floyd Voinche – Individual Capacity</u>** are specifically adopted by reference for purposes of this Count.  Plaintiffs contend these allegations establish the requisite

elements of proof necessary to hold Voinche, in his official capacity, City Court and Town of Marksville liable to plaintiffs for the deprivations of their constitutionally-protected rights.

303.    Plaintiffs show that Voinche's subordinates, Stafford and Greenhouse, violated the plaintiffs' rights under the United States Constitution by using deadly force against them when it was objectively unreasonable to do so, and that Voinche, in his official capacity as City Marshal of City Court, and as a policy maker and decision maker of City Court, the Town, and Parish, should be liable for the conduct of Stafford and Greenhouse, because his deliberate indifference to the constitutional rights of persons with whom his subordinates would come into contact while in the course and scope of their employment, including plaintiffs, was the moving force behind the deprivation of plaintiffs' constitutionally-protected rights.

304.    Voinche acted with deliberate indifference to the consequences, and established and maintained a policy, practice or custom of inaction which directly caused or was the moving force behind the violations of plaintiffs' constitutionally protected rights by his subordinates, Stafford and Greenhouse.

305.    Here, Voinche (1) failed to adequately supervise and train Stafford and Greenhouse; (2) a causal link exists between Voinche's failure to adequately train or supervise Stafford and Greenhouse and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.

306.    The facts set forth in the Complaint show that Voinche and City Court failed to adopt, promulgate or enforce a written policy pertaining to (1) the hiring, training, and discipline of law enforcement officers or deputies employed by the Ward 2 City Marshal's office that were in effect on November 3, 2015; (2) the hiring of police officers and deputy marshals; (3) firing or terminating employment of police officers and deputy marshals; (4) disciplining police officers

and deputy marshals; (5) "use of force" and "use of deadly force" policies; or (6) the training of police officers and deputy marshals.

307.    The lack of such policies amounted to a policy of inaction and resulted in and were a direct cause of Greenhouse initiating and Stafford joining in a vehicular pursuit that violated plaintiffs' constitutional rights as it was not supported by a warrant, probable cause or even reasonable cause to believe that Few had committed a crime, was committing a crime or was about to commit a crime.  Properly vetted and trained officers would never have initiated such a pursuit because it was not objectively reasonable to do so.

308.    The lack of such policies amounted to a policy of inaction and resulted in and were a direct cause of Stafford and Greenhouse using deadly force by firing their duty weapons at Christopher and Jeremy when it was not objectively reasonable to do so.  The facts show that Few's vehicle was blocked with no avenue of escape, the position of all officers at the scene was such that any potential movement of Few's vehicle did not present an imminent risk of death or great bodily harm, and Few was commanded to place his hands in the air and he complied by placing his empty, unarmed hands in the air.  Any objectively reasonable officer perceiving these circumstances would conclude that none of the officers in the area were at imminent risk of death or great bodily harm.

309.    Stafford and Greenhouse were both armed with lethal weapons and they were authorized by Voinche to carry those weapons and use them to carry out their functions as peace officers.   Thus, it was a moral certainty that Stafford and Greenhouse would utilize their duty weapons in making arrests and preserving the peace.

310.    Therefore, given the moral certainty that deputy city marshals – who are charged with making arrests and preserving the peace – will be called upon to use deadly force in the

form of their duty weapons when apprehending suspects, making arrests and preserving the peace, the need for proper vetting of such officers to prevent the hiring and arming of officers that have a history or propensity to use excessive force, and the need to properly train and supervise such officers in the constitutional limitations on the use of deadly force is so obvious, that the failure to do so and the failure to adopt, implement, and enforce appropriate and adequate policies to ensure these objectives and to protect the constitutional rights of persons with whom the deputy city marshals come into contact is properly characterized as deliberate indifference to constitutional rights.

311.    Voinche's deliberate indifference to the constitutional rights of persons with whom the deputy city marshals – that he appointed and for whom he is statutorily responsible – including the plaintiffs resulted in and caused Stafford and Greenhouse to use deadly force when it was not objectively reasonable to do so.

312.    Further, Voinche's appointment of Stafford and Greenhouse as deputy city marshals when he knew or should have known of their long history and propensity to use excessive force when making arrests or preserving the peace in the course and scope of their employment as deputy city marshals constitutes a ratification or acceptance of Stafford and Greenhouse's excessive use of force and establishes such excessive use of force as the official custom, policy or practice of City Court.

313.    Acting under color of law and pursuant to official custom, policy or practice, Voinche and City Court knowingly, recklessly, or with deliberate indifference and callous disregard of plaintiffs' constitutionally-protected rights, failed to instruct, supervise, control and discipline on a continuing basis Stafford and Greenhouse in their duties to refrain from: (1) initiating and perpetuating an unlawful vehicular pursuit; (2) using deadly force when it was not

objectively reasonable to do so; and (3) otherwise depriving plaintiffs of their constitutional rights, privileges and immunities.

314.    Voinche, City Court and the Town had actual or constructive knowledge that (a) hiring deputy city marshals with a history of using excessive force, (b) arming them and bestowing upon them authority to make arrests and preserve the peace (c) while not providing adequate training on the constitutional limitations on the use of deadly force, and, (d) not promulgating and operationalizing a written use of deadly force policy, made it virtually certain that Stafford and Greenhouse's firing of their service weapons where it was objectively unreasonable to do so and these defendants' failure to prevent such a misuse of the deadly force through proper instruction, supervision, control, discipline and training on a continuing and ongoing basis, and the promulgation and enforcement of an appropriate use of deadly force policy constitutes deliberate indifference to plaintiffs' constitutional rights.

315.    As a direct cause of the acts of Voinche and City Court, and their policies of inaction and lack of proper vetting, training, supervision, and discipline, Jeremy Mardis was killed and Christopher sustained very serious injuries.  As a result of Jeremy's death and Christopher's injuries, plaintiffs suffered damages, both general and special which are described more fully in other areas of this Complaint (which are incorporated herein by reference), all of which flow from the deprivation of plaintiffs' constitutional rights guaranteed by the United States Constitution, Fourth and Fourteenth Amendments, and protected by 42 U.S.C. §1983.

## COUNT X

42 U.S.C. §1983 – Violation of Fourth and Fourteenth Amendments
Supervisory Liability of Floyd Voinche
In His Official Capacity and Municipal Liability of City Court, and Liability of City Court,
Town of Marksville, And Parish of Avoyelles –
Custom, Policy or Practice and Deliberate Indifference

316.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

317.    Through the individual actions or inactions of Voinche for such conduct as erroneous and wrongful hiring or appointing Stafford and Greenhouse as deputy city marshals, failing to adopt, promulgate and utilize an adequate policy for the vetting of deputy city marshals, failing to properly train Stafford and Greenhouse regarding use of force and use of deadly force, failing to adopt, promulgate and enforce an adequate force and use of deadly force policy, and in ratifying Stafford and Greenhouse's prior history of use of excessive force, Voinche is liable to plaintiffs because such actions and inactions were a direct cause of the shooting, the death of Jeremy Mardis, and the critical injury of Christopher Few, and the violation of plaintiffs' constitutional rights.

318.    "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992). A supervisor may also be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009).

319.    In addition to plaintiffs' claims against Norris Greenhouse, Jr. and Derrick Stafford, plaintiffs are also asserting claims against their supervisor, Floyd Voinche, City Court, and the Town.  Voinche's own conduct violated plaintiffs' constitutionally protected rights and was a direct cause of the death of Jeremy Mardis and severe injuries to Christopher Few.

68

320.     Voinche was a policy maker of City Court.  In that capacity, Voinche knew or should have known and it was obvious that a likely consequence of the failure to implement a use of deadly force policy would be the deprivation of the constitutional rights of subjects and innocent bystanders such as in this case.

321.     On the date of the shooting, City Court and Voinche had equipped and authorized both Stafford and Greenhouse to be equipped with firearms.  Stafford and Greenhouse were in the course and scope of employment with City Court and acting as deputy city marshals.

322.     Voinche is the statutorily-designated executive officer of City Court and is statutorily charged with executing the orders and mandates of City Court, as well as in making arrests and preserving the peace. See La-R.S. §13:1881(A).  As executive officer of City Court, Voinche is a policymaker and decision maker of City Court and the Town of Marksville.

323.     By statute, Voinche is authorized to appoint one or more deputy marshals having the same powers and authority as the marshal. La-R.S. §13:1881(B).  And, by statute, Voinche is responsible for the actions of the deputy marshals, including Stafford and Greenhouse. Specifically, La-R.S. §13:1881(B) states that "[T]he marshal may appoint one or more deputy marshals having the same powers and authority as the marshal, but the marshal shall be responsible for their actions.

324.     Here, Stafford and Greenhouse, in engaging in the pursuit of Christopher and Jeremy and in drawing and discharging their duty weapons, were engaged in conduct reasonably foreseeable to Voinche and City Court.  Voinche and City Court armed Stafford and Greenhouse to assist in making arrests and preserving the peace.

325.     Voinche and City Court knew to a moral certainty that deputy city marshals, when engaged in the course and scope of their employment, will be required from time to time to

initiate vehicular pursuits, make arrests, and utilize their duty weapons when engaged in such law enforcement actions.  Voinche and City Court armed Stafford and Greenhouse so that they would be equipped to perform such actions.

326.    Therefore, the need to train officers in the constitutional limitations on the use of deadly force is so obvious that the failure to do so can properly be characterized as deliberate indifference to constitutional rights. See *Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989);

327.    In addition, given the history of Stafford and Greenhouse in using excessive force when making arrests, the need for continuing and ongoing training is so plainly obvious to Voinche and City Court that failure to provide such continuing and ongoing training on the use of force and, in particular use of deadly force can properly be characterized as deliberate indifference to constitutional rights.

328.    Further, given the moral certainty that the use of duty weapons will be used when performing their functions as deputy city marshals, the need to have an appropriate written and enforceable use of deadly force policy – which Voinche and City Court did not have – is so obvious that their failure to have such a policy can properly be characterized as deliberate indifference to constitutional rights.

329.    Plaintiffs show that the deliberate indifference of Voinche, City Court and the Town in failing to implement and enforce a constitutionally-compliant use of deadly force policy, and the failure to provide continuing and ongoing training on the use of deadly force including such matters as "shoot, don't shoot" were direct causes of the death of Jeremy Mardis and serious injury to Christopher Few.

330.    Therefore, defendants are liable to plaintiffs for the violation of plaintiffs' rights under the United States Constitution including the Fourth and Fourteenth Amendments.

## COUNT XI

<u>42 U.S.C. §1983 – Violation of the Fourth and Fourteenth Amendments for Deliberate
Indifference to the Serious Medical Needs Of Jeremy Mardis and Christopher Few –
Liability of Derrick Stafford, Norris Greenhouse, Jr., Jason Brouillette, and Kenneth Parnell, III</u>

331.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual
allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if
fully set forth herein.

332.     As a result of the shooting, Jeremy Mardis sustained multiple gunshot wounds to
his head, body and extremities.  These wounds caused severe loss of blood and ultimately,
Jeremy's death approximately ten (10) minutes following being shot.  Jeremy sustained a non-
exiting gunshot entry wound to the left eye, an exiting gunshot wound to the neck/back area, a
non-exiting gunshot wound to his body and right arm, an exiting gunshot wound to his left arm, a
non-exiting gunshot wound to the left leg, among other miscellaneous trauma, and was bleeding
profusely.  Jeremy's traumatic gunshot wounds were open and obvious and the degree of these
injuries were so obvious that even a lay person would easily recognize the necessity for medical
attention.  To be sure, Jeremy's gunshot wounds constituted a serious medical need.

333.     During the intervening minutes between the time of being shot and his death,
none of the officers on scene provided any comfort measures, first aid, or otherwise attempted to
stop Jeremy's bleeding, or alleviate his suffering.  In fact, in excess of eight (8) minutes passed
before any of the officers even checked Jeremy for a pulse.

334.     From the moment Jeremy was shot until he died, the officers on the scene
including Greenhouse, Stafford, Brouillette and Parnell exhibited callous and deliberate
indifference to Jeremy's medical needs and condition.  This deliberate indifference to Jeremy's
serious medical needs caused him undue and extreme pain and suffering, hastened his death and

denied Jeremy a chance of survival. The defendants' actions and omissions constitute a violation of Jeremy's rights under the United States Constitution including the Fourth and Fourteenth Amendments.

335.    Similarly, Greenhouse, Stafford, Brouillette and Parnell exhibited callous and deliberate indifference to the serious medical needs of Christopher Few by denying or delaying him medical treatment.

336.    During the shooting, Christopher sustained multiple gunshot wounds to the head and chest that caused him to bleed profusely and audibly choke on his own blood due to internal bleeding.  Christopher's gunshot wounds were so obvious that even a lay person would easily recognize the necessity for medical attention.  To be sure, Christopher's gunshot wounds constituted a serious medical need.

337.    Following the shooting, Christopher was handcuffed but Greenhouse, Stafford, Brouillette and Parnell exhibited deliberate indifference to Christopher's serious medical needs in that they failed to provide comfort measures, failed to provide first aid, and otherwise denied or delayed medical treatment. This deliberate indifference to Christopher's serious medical needs caused him undue pain and suffering and constitutes a violation of Christopher's rights under the Eighth and Fourteenth Amendments of the United States Constitution.

338.    In both Jeremy and Christopher's case, the defendant officers Greenhouse, Stafford, Brouillette and Parnell knew of the risk of serious harm to Jeremy and Christopher, disregarded that risk, and demonstrated a level of conduct far beyond and more egregious than mere negligence or gross negligence but rather a callous and deliberate indifference to plaintiffs' serious medical needs.

339.     As a direct result of the acts, omissions and deliberate indifference to Jeremy's serious medical need, Stafford and Greenhouse deprived Jeremy of the right to life, the right to be free of suffering, equal protection, due process of law, and the right to receive timely medical care for a serious medical need guaranteed to him by the United States Constitution including the Fourth and Fourteenth Amendments.

### COUNT XII

42 U.S.C. §1983 – Fourth and Fourteenth Amendments –
Supervisory Liability of Floyd Voinche
In His Official Capacity and Municipal Liability of City Court, and Liability of City Court,
Town of Marksville, And Parish of Avoyelles –
Custom, Policy or Practice and Deliberate Indifference

340.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

341.     Prior to November 3, 2015, defendants Voinche, City Court and the Town developed, maintained, utilized and/or adhered to one or more policies, customs, patterns or practices (collectively "policy" or "policies") exhibiting deliberate indifference to the constitutional rights of persons in the community and those persons coming into contact with armed deputy city marshals, that caused or was the moving force behind the violation of plaintiffs' constitutional rights including those protected by 42 U.S.C. §1983 and the United States Constitution, including Amendments thereto.

342.     These policies exhibited deliberate indifference to the constitutional rights of persons in Avoyelles Parish, Louisiana including, but not limited to, those persons subject to the jurisdiction and peacekeeping authority of the Marksville Ward 2 City Marshal and Marksville

Ward 2 Deputy City Marshals, as well as those persons coming into contact with deputy city marshals and officers of the Marksville Police Department.

343.    These policies caused or resulted in the violation plaintiffs' and Jeremy's constitutional rights under the Fourth and Fourteenth Amendments of the United States Constitution, to be free from state actions that cause (a) an unreasonable seizure of persons such as Jeremy and Christopher; (b) the use of excessive and deadly force against Jeremy and Christopher, (c) an unwarranted state interference with plaintiffs' right to a familial relationship with Jeremy.

344.    Defendants Voinche, City Court and Town developed, maintained, utilized and/or adhered to one or more policies, customs, patterns or practices (collectively "policy" or "policies") of the use of excessive or deadly force against citizens when such force was excessive or disproportionate to the need, objectively unreasonable under the circumstances, or when such use was unwarranted due to the lack of an imminent danger or threat of danger of death or great bodily harm to anyone.  In short, the customs, policies or practice caused the use of excessive or deadly force against persons when such force was not objectively reasonable – as in this case.

345.    The unconstitutional policies and deliberate indifference demonstrated by Voinche, City Court and Town consists of the recklessly inadequate or non-existent policy protecting against the hiring of deputy city marshals that (a) have a history of use of excessive force; (b) that were not fit to serve as deputy city marshals; and (c) that lacked appropriate use of deadly force and "shoot, don't shoot" training.  The deliberate indifference of these defendants is also manifest in their lack of a constitutionally-compliant use of deadly force policy.

346.     The shooting of Christopher and Jeremy were caused by recklessly inadequate or non-existence of such policies because Stafford and Greenhouse possessed and demonstrated the propensity to use excessive force on persons when making an arrest or assisting officers and by arming deputy city marshals the need to have competent and qualified officers were so obvious and apparent that the failure to adopt, promulgate and enforce policies intended to guard against the hiring of officers with such dangerous propensities amounts to deliberate indifference to constitutional rights.

347.     In addition, these defendants' deliberate indifference extended to its failure to properly supervise and train deputy city marshals including Stafford and Greenhouse on the constitutional limitations on the use of deadly force, which failure was a direct cause of the shooting of Jeremy and Christopher.

348.     Given the moral certainty that law enforcement officers will be called upon to use force including deadly force when apprehending suspects or otherwise discharging their duties as peace officers, the need to promulgate and enforce a written use of deadly force policy and train deputy city marshals in the constitutional limitations on the use of deadly force is so obvious, that the failure to do so is properly characterized as deliberate indifference to constitutional rights.

349.     Plaintiffs suffered damages as a result of these defendants' deliberate indifference violations and, therefore, the defendants are liable for plaintiffs' damages.

**COUNT XIII**

42 U.S.C. §1983 – Violation of the Fourth and Fourteenth Amendments
for Custom, Policy or Practice of Use of Excessive Force –
Liability of City Court, Town of Marksville, and Parish

350.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

351.    Prior to November 3, 2015, defendants Voinche, City Court, Town and Parish developed, maintained, utilized and/or adhered to one or more policies, customs, patterns or practices (collectively "policy" or "policies") exhibiting deliberate indifference to the constitutional rights of persons in the community and those persons coming into contact with armed deputy city marshals, that caused or was the moving force behind the violation of plaintiffs' constitutional rights including those protected by 42 U.S.C. §1983 and the United States Constitution, including Amendments thereto.

352.    These policies exhibited deliberate indifference to the constitutional rights of persons in Avoyelles Parish, Louisiana including, but not limited to, those persons subject to the jurisdiction and peacekeeping authority of the Marksville Ward 2 City Marshal and Marksville Ward 2 Deputy City Marshals, as well as those persons coming into contact with deputy city marshals and officers of the Marksville Police Department.

353.    The defendants Voinche, City Court, Town and Parish maintained a policy, custom or practice of inadequately and improperly investigating citizen complaints of police misconduct and peace officers' excessive use of force and/or allowing the use of excessive force, failing to properly discipline officers accused of using excessive force, and failing to provide proper training to guard against the use of excessive force.

354.    Prior to Voinche appointing Stafford and Greenhouse as deputy city marshals, Voinche, City Court, Town and Parish had knowledge, actual and/or constructive, of the

76

propensity of Stafford and Greenhouse to use excessive force when making arrests or assisting officers.

355.    These defendants also had knowledge, actual and/or constructive, of complaints and lawsuits alleging excessive use of force by other officers employed by the Town of Marksville, as well.

356.    Despite this knowledge of numerous incidents involving the excessive use of force by peace officers, these defendants failed to properly investigate the complaints and incidents, failed to properly discipline the involved officers, failed to properly scrutinize the background of new hires, and failed to properly train peace officers regarding the constitutional limitations on the use of force such that these defendants ratified the excessive use of force.

357.    The ratification of excessive use of force by peace officers serving in the territorial limits of City Court and the Town of Marksville became and was the custom, policy and practice of these defendants and was the cause and moving force of the deprivation of plaintiffs' constitutional rights and the shooting of Jeremy and Christopher.

358.    Because the incidents generally described herein are and were so numerous, it was obvious to any reasonable policy maker or decision maker that it would continue if appropriate policies were not promulgated, implemented, and enforced through training and discipline.  The defendants' conduct, acts and/or omissions described herein amount to deliberate indifference to the constitutional rights plaintiffs and others coming into contact with deputy city marshals.

359.    These defendants are liable for plaintiffs' damages caused by their deliberate indifference.

## COUNT XIV

Punitive Damages
Applicable to All Defendants Sued in Their Individual Capacity Including
Derrick Stafford, Norris Greenhouse, Jr., Floyd Voinche,
Jason Brouillette, and Kenneth Parnell, III

360.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual

allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if

fully set forth herein.

361.     Plaintiffs show that under 42 U.S.C. §1983, punitive damages may be awarded if

the official conduct of the defendant is motivated by evil intent or demonstrates reckless or

callous indifference to a person's constitutional rights. *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th

Cir. 1994); *Smith v. Wagner*, 2015 U.S. Dist. LEXIS 105115 * (W.D. La. Aug. 10, 2015).

362.     Here, Stafford and Greenhouse's conduct demonstrated not only evil intent but

reckless or callous indifference to the constitutional rights of Christopher and Jeremy.

363.     Norris Greenhouse, Jr. initiated a warrantless stop and pursuit where he lacked

probable cause to believe Christopher had committed a crime.

364.     Both Stafford and Greenhouse discharged their duty weapons under

circumstances where neither Christopher nor Jeremy presented an imminent threat of death or

great bodily harm.  When Stafford and Greenhouse unleashed the hail of gunfire, Christopher

and Jeremy were unarmed, and Christopher had his empty hands held in the air – in conformance

with the verbal instructions and commands of one or more of the officers on scene. According to

statements made by Stafford and captured on Parnell's body camera video, he did not even see

Jeremy before he discharged his duty weapon fourteen (14) times.  Moreover, Parnell's body

camera video confirms that Christopher's hands are in the air, signaling his peaceful surrender,

when Stafford and Greenhouse begin shooting a total of eighteen (18) times.  And, when

Stafford and Greenhouse began discharging their duty weapons, none of the officers on the scene were in a position of danger relative to the any movement of Christopher's vehicle.

365.    Any objectively reasonable officer presented with these circumstances, would not have used deadly force.

366.    Stafford and Greenhouse's conduct demonstrated deliberate indifference and/or reckless and/or callous disregard for Christopher and Jeremy's constitutional rights such that plaintiffs are entitled to and defendants, Norris Greenhouse, Jr. and Derrick Stafford, are liable for punitive damages.

367.    In addition, Floyd Voinche, in his individual capacity, is liable for punitive damages, as well.

368.    Floyd Voinche is and has been the duly elected marshal of City Court. Voinche is also statutorily-designated executive officer of City Court and is statutorily charged with executing the orders and mandates of City Court, as well as in making arrests and preserving the peace. See La-R.S. §13:1881(A).  As executive officer of City Court, Voinche is a policymaker and decision maker of City Court and the Town of Marksville.

369.    According to La-R.S. §13:1881(B) Voinche is authorized to appoint one or more deputy marshals having the same powers and authority as the marshal but, by statute, Voinche is responsible for the actions of the deputy marshals, including Stafford and Greenhouse. Specifically, La-R.S. §13:1881(B) states that "[T]he marshal may appoint one or more deputy marshals having the same powers and authority as the marshal, but the marshal shall be responsible for their actions.

370.    At times relevant hereto, Voinche, as marshal of City Court, appointed defendants Stafford and Greenhouse as deputy marshals of City Court.  As deputy marshals, Stafford and

Greenhouse were exercising their authority, as derived from the marshal, Voinche, of "making arrests and preserving the peace" and, therefore, were acting under color of law when they engaged in the pursuit and, ultimately, the unconstitutional seizure of Few and Jeremy.

371.    Voinche is responsible for the actions of Stafford and Greenhouse, including the consequences of their actions.

372.    The facts demonstrate that both Stafford and Greenhouse have a long history of using excessive force, which history is documented in their personnel files, official records of Voinche, City Court, Town of Marksville, and the public records and in for the Parish of Avoyelles.  Voinche, City Court, and Town of Marksville has actual and/or constructive knowledge of these records including the public records.

373.    Voinche, City Court, and Town of Marksville allowed Stafford and Greenhouse to be hired and retained as deputy city marshals, and allowed them to be equipped with duty weapons that had the capacity to employ deadly force against subjects such as Christopher Few and Jeremy Mardis.

374.    And, as further evidence of the recklessness of these defendants, neither Voinche, City Court nor Town of Marksville provided any initial or ongoing training regarding "shoot, don't shoot" scenarios, or the use of deadly force and, in fact, none of these defendants even had a written departmental policy on the use of deadly force.  Such failure to train deputy marshals Stafford and Greenhouse on use of deadly force and failure to implement a constitutionally-compliant use of deadly force policy constitutes deliberate indifference and a reckless and callous disregard for the constitutional rights of Christopher Few and Jeremy Mardis.  Thus, Voinche, City Court, and Town of Marksville is liable for punitive damages, as well.

## COUNT XV

### Deprivation of Rights Under the Fourth, Fifth and Fourteenth Amendments
### of the United States Constitution and 42 U.S.C. §1983 –

375.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

376.     This claim is asserted by plaintiff, Candace Few.  Candace owned Vehicle 1 that was severely damaged as a result of the gunshots fired by Stafford and Greenhouse, as well as the bleeding of the gunshot victims, Jeremy and Christopher.  The total damages of her vehicle exceed the value of the vehicle such that it is a total loss.

377.     Through the actions of Stafford and Greenhouse, acting under color of law, these defendants have violated the constitutional rights of Candace arising under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and enforceable under 42 U.S.C. §1983.

378.     Stafford and Greenhouse have deprived Candace of her property without due compensation and without due process of law.

379.     Stafford and Greenhouse are, therefore, liable for Candace's damages.

## COUNT XVI

380.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

381.     Plaintiffs seek an award of costs under Fed. R. Civ. P. 54(d). These costs include (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts

necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees; (6) compensation of court-appointed experts, as well as any and all such other costs allowed by the Federal Rules of Civil Procedure or other law.

## COUNT XVII

### Liability Under Louisiana State Tort Law –La-C.C. art. 2315, *et seq.* – Violation of La-R.S. §14:30.1 and §14:27 – Second Degree Murder and Attempted Second Degree Murder – Liability of Derrick Stafford and Norris Greenhouse, Jr.

382.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

383.    La-C.C. art. 2315 requires that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.  Violations of La-R.S. §14:30.1 (Second Degree Murder) and La-R.S. §14:30.1 as modified by La-R.S. §14:27 (Attempted Second Degree Murder) constitute fault under La-C.C. art. 2315.

384.    On November 3, 2015, Stafford and Greenhouse, with specific intent to kill or inflict great bodily harm, shot and killed Jeremy Mardis, and shoot and critically wounded Christopher Few.  Stafford and Greenhouse's actions in shooting Few and Jeremy constitute violations of La-R.S. §14:30.1 (Second Degree Murder) and La-R.S. §14:30.1 as modified by La-R.S. §14:27 (Attempted Second Degree Murder).  Both of these Louisiana Revised Statutes are incorporated herein by reference.

385.    La-R.S. §14:30.1 (Second Degree Murder) is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La-R.S. §14:27

(Attempted Second Degree Murder) is the attempted killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm.

386.    Stafford and Greenhouse willfully, unlawfully, knowingly and intentionally committed second degree murder under La-R.S. 14:30.1 and attempted second degree murder under La-R.S. 14:30.1 as modified by La-R.S. 14:27 in that they did shoot Christopher Few with the intent to kill or inflict great bodily harm against him when he did not pose an imminent threat or danger of death or great bodily harm to the lives of Stafford and Greenhouse, or that of another, and, further, Stafford and Greenhouse fatally shot Jeremy, who was a six-year-old minor child seated in the front passenger seat of the Few vehicle and did not pose an imminent threat or danger of death or great bodily harm to the lives of Stafford and Greenhouse, or that of another.

387.    La-R.S. §14:30.1 (Second Degree Murder) and La-R.S. §14:30.1 as modified by La-R.S. §14:27 (Attempted Second Degree Murder) both give rise to a civil duty not to kill a human being or attempt to kill a human being.  Both Stafford and Greenhouse breached this duty and caused Few to sustain serious physical injuries and killed Jeremy.

388.    Thus, Stafford and Greenhouse are liable for plaintiffs' damages for these acts.

## COUNT XVIII

Liability Under Louisiana State Tort Law –La-C.C. art. 2315, *et seq*. –
Intentional Assault and Battery –
Liability of Derrick Stafford and Norris Greenhouse, Jr.

389.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

390.    La-C.C. art. 2315 requires that every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.  The fault of Derrick Stafford and Norris Greenhouse, Jr. includes the intentional torts of assault and battery.

391.    On November 3, 2015, Stafford and Greenhouse, by shooting, did intentionally commit harmful or offensive contact with Jeremy Mardis and Christopher Few by shooting which was intended by Stafford and Greenhouse to cause Jeremy and Chistopher to suffer such a contact, without their consent.  Therefore, Stafford and Greenhouse committed a battery upon both Jeremy Mardis and Christopher Few.

392.    Similarly, Stafford and Greenhouse committed an assault upon Jeremy and Christopher by placing them in reasonable apprehension of receiving a battery, without their consent.

393.    As a result of the assault and battery, Jeremy and Christopher sustained damages, both general and special, for which defendants are liable to plaintiffs.

## COUNT XIX

Liability Under Louisiana State Tort Law –La-C.C. art. 2315, *et seq.* –
Intentional Infliction of Emotional Distress –
Liability of Derrick Stafford and Norris Greenhouse, Jr

394.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

395.    Stafford and Greenhouse's actions constitute extreme and outrageous conduct that caused Jeremy Mardis and Christopher Few to suffer severe emotional distress and defendants, Stafford and Greenhouse, knew that severe emotional distress would be certain or substantially certain to result from the shooting.

396.     Stafford and Greenhouse's use of deadly force, under the circumstances with which they were presented, was objectively unreasonable and so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and must necessarily be regarded as atrocious and utterly intolerable in a civilized society.

397.     Stafford and Greenhouse are therefore liable for the emotional distress they caused Jeremy Mardis and Christopher Few to suffer.

### **COUNT XX**

<u>Liability Under Louisiana State Tort Law –</u>
<u>La-C.C. art. 2315.6 –</u>
<u>Liability of Derrick Stafford and Norris Greenhouse, Jr.</u>

398.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

399.     Christopher Few was present for and viewed the events that resulted in the violent and traumatic death of Jeremy Mardis.  As a result, Christopher suffered mental anguish and emotional distress as a result of bearing witness to the tragic and gruesome death of his son, Jeremy.

400.     Under La-C.C. art. 2315.6, Christopher is entitled to recover all damages for the mental anguish and emotional distress he suffered as a result of having viewed these events which caused the death of his son.  Further, defendants are liable to Christopher for these damages.

## COUNT XXI

Liability Under Louisiana State Tort Law –
La-C.C. arts. 2315, 2316, 2317, and 2320 –
Liability of Derrick Stafford, Norris Greenhouse, Jr., Floyd Voinche,
City Court, and Town of Marksville

401.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual

allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if

fully set forth herein.

402.    La-C.C. art. 2315 requires that every act whatever of man that causes damage to

another obliges him by whose fault it happened to repair it.

403.    La-C.C. art. 2316 provides that every person is responsible for the damage he

occasions not merely by his act, but also by his negligence, his imprudence, or his want of skill.

404.    La-C.C. art. 2317 provides that individuals are responsible not only for the

damage occasioned by their own acts, but also for damage caused by the acts of persons for

whom the individual is answerable, or of the things which the individual has in his custody.

405.    La-C.C. art. 2320 provides that employers are answerable for the damage

occasioned by their employees in the exercise of the functions in which they are employed.

406.    Here, Stafford and Greenhouse had a duty not to shoot and kill Jeremy Mardis,

and a duty not to shoot and critically injure Christopher Few.  At the time of the shooting, any

objectively reasonable officer would have recognized that Christopher and Jeremy did not

present an imminent risk of death or great bodily harm to anyone in the vicinity, and that they

were not committing nor did they commit a crime that warranted the use of deadly force.

Moreover, in compliance with the commands of the law enforcement officers, Christopher Few

surrendered with his empty hands raised in the air prior to any shots being fired.  Christopher Few was unarmed.

407.    Using deadly force under the facts, Stafford and Greenhouse breached the duty owed to Christopher and Jeremy.

408.    Stafford and Greenhouse's breach of duty; namely, the use of deadly force by shooting Christopher and Jeremy were a direct cause of the death of Jeremy and serious injuries to Christopher. And, as a result of the shooting of Christopher and Jeremy, plaintiffs suffered damages for which defendants are liable.

409.    In the instant case, Greenhouse is liable to plaintiffs for the injuries and damages they sustained, due to acts and/or omissions of negligence and/or fault that include but are not limited to the following:

   a.    Attempting to initiate a traffic stop and, thereafter, a pursuit of Christopher Few without legal or probable cause to do so;

   b.    Shooting Christopher Few and Jeremy Mardis and/or creating or causing circumstances under which Christopher Few and Jeremy Mardis were shot;

   c.    Inciting or causing Derrick Stafford to shoot Christopher Few and Jeremy Mardis;

   d.    Excessive use of deadly force;

   e.    Failing to ensure the safety of Jeremy Mardis;

   f.    Utilizing an amount of force disproportionate to the need;

   g.    Failing to act as a reasonably prudent police officer;

   h.    Violation of applicable law enforcement standards;

   i.    Other acts and/or omissions of fault set forth in other parts of the Complaint, all of which are incorporated herein by reference.

410.    In the instant case, Stafford is liable to plaintiffs for the injuries and damages they sustained, due to acts and/or omissions of negligence and/or fault that include but are not limited to the following:

a.  Attempting to initiate a traffic stop and, thereafter, a pursuit of Christopher Few without legal or probable cause to do so;

b.  Shooting Christopher Few and Jeremy Mardis and/or creating or causing circumstances under which Christopher Few and Jeremy Mardis were shot;

c.  Inciting or causing Norris Greenhouse, Jr. to shoot Christopher Few and Jeremy Mardis;

d.  Excessive use of deadly force;

e.  Failing to ensure the safety of Jeremy Mardis;

f.  Utilizing an amount of force disproportionate to the need;

g.  Failing to act as a reasonably prudent police officer;

h.  Violation of applicable law enforcement standards;

i.  Other acts and/or omissions of fault set forth in other parts of the Complaint, all of which are incorporated herein by reference.

411.    The Town, City Court, and Voinche in his official capacity as City Marshal, are the masters or employers of Stafford and Greenhouse.  Moreover, by statute, Voinche is responsible for the actions of his deputy city marshals.  At the time of the shooting, both Stafford and Greenhouse were in the course and scope of their employment with The Town, City Court and Voinche.

412.     The Town, City Court and Voinche are vicariously liable under La-C.C. art. 2320, for the tortious acts and/or omissions of Norris Greenhouse, Jr. and Derrick Stafford by virtue of the master/servant relationship, or principle of *respondeat superior*.

## COUNT XXII

### Liability of Floyd Voinche under La-R.S. §13:1881(B)

413.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

414.     La-R.S. §13:1881(B) states that "[T]he marshal may appoint one or more deputy marshals having the same powers and authority as the marshal, but the marshal shall be responsible for their actions.

415.     Voinche is "the marshal" of City Court and, acting under the statutory authority of La-R.S. §13:1881 appointed both Stafford and Greenhouse as deputy marshals.  As such, Voinche is responsible for their actions.

416.     Therefore, Voinche is responsible for the actions and conduct of Stafford and Greenhouse as set forth and described in this Complaint, which actions and conduct caused the death of Jeremy and serious injury to Christopher.

417.     Thus, Voinche, individually and in his official capacity as City Marshal, are liable for plaintiffs' injuries and damages.

418.     Plaintiffs further show that Voinche's responsibility arises by operation of law, La-R.S. §13:1881(B), and is not limited to liability arising under Louisiana law but makes Voinche responsible for Stafford and Greenhouse's violations of 42 U.S.C. §1983 and the United States Constitution, including Amendments thereto, as well.

## COUNT XXIII

### Municipal Liability Under La-R.S. 42:1441.3

419.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

420.     Under La-R.S. 42:1441.3, City Court, Voinche, the Town, and Parish are liable for offenses and torts of Norris Greenhouse, Jr., Derrick Stafford, Jason Brouillette, and Kenneth Parnell, III.

## COUNT XXIV

### Liability for violations of Article I §2 of the Louisiana State Constitution

421.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

422.     Article I §2 of the Louisiana State Constitution provides, in part, that "No person shall be deprived of life, liberty, or property, except by due process of law." LSA-Const. Art. 1 §2.

## COUNT XXV

### Liability for violations of Article I §5 of the Louisiana State Constitution

423.     Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

424.    Article I §5 of the Louisiana State Constitution establishes the rights of Louisiana's citizens to be "secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. LSA-Const. Art. 1 §5.

425.    Defendants, Stafford and Greenhouse, violated plaintiffs' clearly established state constitutional rights under Article I §5 of the Louisiana State Constitution to be free from unreasonable seizures.

## COUNT XXVI

General Statement of Wrongful Death and Survival Action Claims
Brought by Christopher Few and Catherine Mardis - La-C.C. arts. 2315.1 and 2315.2

426.    Christopher Few and Catherine Mardis are the natural, surviving parents of Jeremy Mardis.  In that capacity, each are entitled to bring an action to recover damages sustained or arising out of the death of Jeremy Mardis under Louisiana law, including La.C.C. arts. 2315.1 entitled "Survival action" and 2315.2 entitled "Wrongful death action", and include, but are not limited to, the following:

a.    Decedent's physical pain and suffering prior to death;

b.    Decedent's mental anguish and anxiety prior to death;

c.    Scarring and disfigurement suffered prior to death;

d.    Decedent's funeral expenses;

e.    Plaintiff's loss of love, affection, society, consortium and services;

f.    Plaintiff's mental anguish and anxiety;

g.    Plaintiff's loss of support;

h.    Medical and related expenses; and

i.    Any and all such other damages, both general and special, which will be proved at the trial hereof and otherwise as allowed by law."

427.    The damages are recoverable under 42 U.S.C. §1983 for defendants' violations of the United States Constitution, including the Fourth and Fourteenth Amendments, as well.

## COUNT XXVII

### The Individual Injuries and Damages of Christopher Few

428.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if fully set forth herein.

429.    Plaintiff, Few, sustained injuries and damages for which defendants are liable. These injuries and damages include but are not limited to the following:

a.    Traumatic injury to plaintiffs' head and neck, as well as other parts of plaintiff's body including the soft tissues;

b.    Other traumatic injuries which are described in plaintiffs' medical records and which will be described in the testimony of plaintiff and plaintiffs' treating health care providers;

c.    Other injuries which will be shown with particularity at the trial of this matter.

430.    Plaintiff, Few, individually, has suffered damages, both general and special, past, present and future, for which defendants are liable.  These damages include, but are not limited to, the following:

a.    Physical pain and suffering (past, present and future);

b.    Mental anguish and anxiety and depression (past, present and future);

c.    Residual physical disability;

d.    Loss of enjoyment of life;

e.    Medical and rehabilitation expenses;

92

f.     Property damage, loss of use damage, and depreciation or depreciated value of

plaintiff's vehicle;

g.     Loss of income and earning capacity;

h.     Loss of consortium, service and society; and

i.     Other damages, both general and special, which will be shown with particularity

at the trial hereof.

431.    The damages are recoverable under 42 U.S.C. §1983 for defendants' violations of

the United States Constitution, including the Fourth and Fourteenth Amendments, as well.

## COUNT XXVIII

432.    Plaintiffs hereby incorporate all of the foregoing paragraphs and factual

allegations of this Complaint, as well as all facts pled in the remainder of the Complaint, as if

fully set forth herein.

433.    This claim is asserted by plaintiff, Candace Few.  Candace owned Vehicle 1 that

was severely damaged as a result of the gunshots fired by Stafford and Greenhouse, as well as

the bleeding of the gunshot victims, Jeremy and Christopher.  The total damages of her vehicle

exceed the value of the vehicle such that it is a total loss.

434.    Candace shows that defendants, Stafford and Greenhouse, are liable for her

property damage and loss of use damages under Louisiana tort law, La-C.C. art. 2315, et seq.

Defendants, City Court, Voinche, the Town, and Parish are likewise liable under La-C.C. art.

2320, for *respondeat superior* liability, and under La-R.S. 42:1441.3.

435.    Voinche is responsible for the actions of Stafford and Greenhouse under La-R.S.

§13:1881(B).

436.    Stafford and Greenhouse have deprived Candace of her property without due compensation and without due process of law and, therefore, they are liable under the Louisiana Constitution, as well.

### DEMAND FOR TRIAL BY JURY

437.    Plaintiffs hereby demand a trial by jury.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiffs, Christopher Few, Catherine Mardis, and Candace Few demand and pray for Judgment against Defendants, Derrick Stafford, in his individual capacity; Norris Greenhouse, Jr., in his individual capacity; Floyd Voinche, in his individual and official capacity; City Court of the Town of Marksville; Town of Marksville; Progressive Paloverde Insurance Company; Jason Brouillette, in his individual capacity; and Kenneth Parnell, III, in his individual capacity; jointly, severally and/or *in solido*, as allowed by applicable law, for all sums reasonable in the premises, general and special damages, compensatory damages, punitive damages as allowed by law, attorney fees, all costs of these proceedings, prejudgment interest as allowed by law, legal interest from the date of judicial demand until paid, and any and all such other relief, whether in law or in equity, to which the plaintiffs are entitled.

BY ATTORNEYS:

*/s/Steven P. Lemoine*
STEVEN P. LEMOINE, T.A. (#20269)
ROBERT H. SCHMOLKE (#8802)
**ROBERT H. SCHMOLKE, A**
**PROFESSIONAL LAW CORPORATION**
4313 Bluebonnet Blvd, Suite A
Baton Rouge, LA  70809
Telephone:    (225)292-1717
Fax:            (225)292-1727
E-mail: steve@schmolkelaw.com

**Attorney for Plaintiffs, Christopher Few, Catherine Mardis and Candace Few**

AND

*/s/Joseph H. Jolissaint*
JOSEPH H. JOLISSAINT (#28939)
**ATTORNEY AT LAW**
4313 Bluebonnet Blvd, Suite A
Baton Rouge, LA  70809
Telephone:      (225)757-5600
Fax:                (225)757-8022
E-mail: joseph@jolissaintlaw.com
**Attorney for Plaintiffs, Christopher Few, Catherine Mardis and Candace Few**

AND

*/s/Mark A. Jeansonne*
MARK A. JEANSONNE (#20883)
**MARK A. JEANSONNE,
A PROFESSIONAL LAW CORPORATION**
2472 Main Street
Hessmer, LA 71341
Telephone:      (318)563-9000
Fax:                (318)563-9003
Email:  jeansonnelaw@yahoo.com
**Attorney for Plaintiff, Christopher Few**

**PLAINTIFFS REQUESTS ISSUANCE OF SUMMONS FOR:**

**Derrick Stafford**
207 Tricia Park Road
Mansura, LA 71350

**Norris Greenhouse, Jr.**
522 West Bontemps
Marksville, LA 71351

**Floyd Voinche**
2951 Highway 1192
Marksville, LA 71351-3728

**City Court of the Town of Marksville**
Through its executive officer:
Floyd Voinche
2951 Highway 1192
Marksville, LA 71351-3728

**Town of Marksville**
Through its agent:
Mayor John H. Lemoine
427 North Washington Street
Marksville, LA 71351

**Parish of Avoyelles**
Through its agent:
President of the Avoyelles Parish Policy
Jury, Col. Charles B. Jones
213 N. Main St.
Marksville, LA 71351

**Progressive Paloverde Insurance Company**
Through its agent:
Louisiana Secretary of State
8585 Archives Ave.
Baton Rouge, LA 70809

**Jason Brouillette**
130 Magnolia Estates
Marksville, LA 71351-3484

**Kenneth Parnell, III**
472 Island Rd.
Marksville, LA 71351-4517